# Tilford *v.* Torrey & Lockwood.

### Bill in Equity to foreclose Mortgage.

1. *Trust; when results in favor of wife.*—If the husband purchases lands with the proceeds or accumulations of the wife's separate estate and takes title in his own name, a trust results to the wife, and she may elect to charge him personally or claim the purchase as her own; so also if part only of the purchase money is paid with such funds, or the husband uses them in making improvements on the lands, a resulting trust arises to the extent of the sums thus expended, and the wife may charge the lands and improvements with their repayment to her.

2. *Resulting trust; what essential to existence of.*—It is indispensable to the existence of the resulting trust, that the trust funds should be paid at the time of the purchase; the use of such funds by the trustee, after the purchase has been completed, in payment of the debt contracted for the land, will not raise a resulting trust.

3. *Same; proof required to raise.*—Where it is sought to raise a resulting trust in real estate or to establish an equity to charge it, resting merely in parol and in opposition to the written evidence of title, the clearest and most convincing proof must be made to show that the trust fund formed the consideration of the purchase to the extent claimed, and every fact and circumstance necessary to enable the court to identify the funds used, must be pointedly stated and fully proved.

4. *Declarations by husband to wife; when not admissible evidence.*—Declarations made by the husband to the wife, after the execution of a mortgage on lands, the title to which he took in his own name, at the time of the purchase (which the wife alleged was made with moneys belonging to her separate estate) are not admissible evidence against the mortgagee, to raise a resulting trust, or equity to charge the land in favor of the wife.

5. *Same; how weighed.*—Declarations made between husband and wife in the privacy and confidence of the marital relation are in all cases most unsatisfactory evidence, to be received and weighed with great caution and circumspection.

APPEAL from Jefferson Chancery Court.

Heard before Hon. CHARLES TURNER.

The bill was filed for the foreclosure of a mortgage on certain real estate in the city of Birmingham, executed by the appellant and her deceased husband,

William H. Tilford, to secure the payment of a debt due from him to the appellees. The bill alleges the mortgaged premises were purchased by the said William H., of the "Elyton Land Company," that he paid at the time of the purchase, fifty dollars of the purchase money in cash, and made his promissory note for the remainder of the purchase money, which is outstanding and unpaid; that he received from said company an obligation to convey title on the full payment of the purchase money, and on improving the real estate in a manner specified in the obligation; that he made the improvements, and being indebted to Preston & Stetson, made a mortgage of the premises for their security, with power of sale, in which the appellant did not join. Subsequently he made the mortgage to the appellees of which foreclosure is sought, and in this mortgage the appellant joined. A sale was had under the mortgage to Preston & Stetson, at which the appellees became the purchasers. The answer of the appellant alleges that so much of the purchase money of the premises as was paid by her husband was paid with money of her statutory estate, and the improvements made with moneys derived from the same source. The invalidity of the mortgage is therefore asserted.

The evidence discloses that the separate estate of appellant consisted of a tract of land in Marengo county, for which four thousand dollars was paid. Her husband was discharged as a bankrupt in 1869, but subsequently in 1870, 1871 and until June, 1872, was engaged in a retail merchandise business in Perry county, in Eutaw, and in Birmingham. He changed his business in December, 1871, from Eutaw to Birmingham, carrying with him a stock of goods of about the value of fifteen hundred dollars. He made the improvements on the premises in controversy, and occupied them first as a storehouse, and subsequently as a restaurant. The only sales of the real estate proved, which formed appellant's separate estate, were made in the latter part of 1871 and in 1872. For what amount these sales were made does not appear, nor when the money from them was realized. The principal evidence on which appellant relied to support her claim, consisted of declarations made to her by her husband.

The chancellor rendered a decree in favor of the appellees, granting them the relief prayed, and from that decree this appeal is taken.

HARGROVE & LEWIS and R. H. PEARSON, for appellant.

ELLIS PHELAN, contra.

[Tilford v. Torrey.]

BRICKELL, C. J.—It is a well established principle in courts of equity, that if a trustee invests the funds he holds in a fiduciary capacity, in the purchase of lands, taking the conveyance of title in his own name, the cestui que trust may at his election, charge the trustee personally, or may follow the money into the land, and claim the purchase as having been made for him. The principle applies when a purchase is made by a husband, with the proceeds or accumulations of the wife's separate estate. 1 White & Tudor's leading cases, 277–8; Perry on Trusts, § 127. If a part only of the purchase money is paid with trust funds, a resulting trust will be created to the extent of "the payment; or the cestui que trust may charge the lands with the repayment to him of the sum so paid.

To create the equity either to charge the lands, or to raise a resulting trust, a payment of the trust funds at the time of the purchase is indispensable. A subsequent payment by the trustee of the debt he may have contracted in the purchase of the lands, will not by relation attach any trust or lien to the original purchase. The whole theory of a resulting trust, or of the equity of the cestui que trust to follow trust funds into real estate or other property, arises out of the circumstance, that the trust funds, at the time of the purchase, formed its consideration. 1 White & Tudor's Lead. Cases, 275; Jackson v Moore, 6 Cow. 726; Boyd v. McLean, 1 Johns, Ch. 590; Bottsford v. Burr, 2 Ib. 414; Steere v. Steere, 5 Ib. 20; Foster v. Trustees of Athenaeum, 2 Ala. 302. The trust funds being employed in the purchase, when it is made, it is a mere conversion of them into another species of property. From such conversion the trustee cannot claim any benefit, or that they are thereby divested of the trust originally impressed upon them. 2 Story's Eq. § 1258.

To raise a resulting trust in real estate, or to establish an equity to charge it, resting merely in parol, and in opposition to the written evidence of title, clear and convincing evidence is required. Boyd v. McLean, supra; Bottsford v. Burr, supra; Steere v. Steere, supra; Lench v. Lench, 10 Vesey, 517; Baker v. Vining, 30 Maine, 121. The principle in its entirety had no other foundation than that the trust funds formed the consideration of the purchase, in whole or in part. This fact must not be left in doubt and uncertainty, either as to the character, or amount of the funds employed. If the fact is doubtful or uncertain, in either respect, the written evidence of title must prevail.

If the facts of this case are, as alleged by complainant, it

VOL. LIII.

[Tilford *v.* Torrey.]

would seem to be matter of little difficulty for her to show clearly and distinctly the employment of her separate money in the purchase and improvement of the premises in controversy. That she had a separate estate consisting only of a tract of land in Marengo county, originally, is shown. That parts of this land were sold about the time of the purchase of the premises in controversy is true. It is averred in her answer and shown by her deposition that the lands cost originally four thousand dollars. For what amount sales of a part of them were made, is not shown. A part of them she yet retains, and there is no evidence of their value. The husband was discharged as a bankrupt in 1869. It is averred in the appellant's answer, and repeated in her deposition, that afterwards he was without means. He was subsequently engaged in business as a retail merchant in Perry county, in Eutaw, and in Birmingham. The business the appellant claims he conducted as her agent, with her separate moneys. How she obtained the moneys is not shown. In Eutaw he had bought a house and lot, and paid five hundred dollars of the purchase money, which the appellant claimed was her separate money. He carried from Eutaw to Birmingham goods of the probable value of fifteen hundred dollars. These are also claimed as her separate estate, having been purchased with her separate money. The premises in controversy are purchased by the husband in his own name, he contracting to pay therefor fifty dollars in cash—fifty dollars in six months, and seventy-five dollars in twelve months, and to make particular improvements thereon, within a specified time. He executed his own note for the credit payment; and within the prescribed time made the improvements at a cost of about fifteen hundred dollars. The appellant testified that the improvements were made with moneys she sent to her husband, derived from the sales of her lands. She was not in Birmingham until after the completion of the improvements; and the clerk, in the store carried on by the husband there, testified the improvements were paid for with goods from the store, and moneys received there from the sale of goods.

The equity of the appellant, would be to charge the premises with so much of her separate money as was employed in the purchase and formed a part of its consideration when it was made; and so much of her separate moneys as were used in making the improvements. There is not evidence on which she can sustain any claim to the goods her husband had at Eutaw, and carried to Birmingham. She avers that they were hers, and that her husband was selling

[Tilford *v.* Torrey.]

them as her agent. But she does not state where or how she obtained the means of purchasing them. She does not offer any evidence that she had sold any part of her lands, until about the time the goods were carried to Birmingham. Her separate estate consisting only of a single tract of land ; if any part of it was sold, and converted into the goods she must have known it, and would so have testified. Whether the sale she made of her lands in 1871 was made before or after her husband had made the contract of purchase of the premises in controversy, and made the cash payment thereon, does not appear ; nor does it appear when she received any money on this sale.

Under this state of facts, the evidence of the equity the appellant asserts is not clear and convincing. The clerk who was in Birmingham, engaged in transacting the business of the husband, had better opportunities of knowing the source from which payments for the improvements were made than appellant could have. She was residing in Eutaw, and as she states, her only opportunities for knowing anything about the improvements, were from the declarations of her husband. When the declarations were made, whether before or after the making of the mortgage under which the appellees claim, is not shown. If made after the mortgages, they are not admissible as evidence. Whenever they may have been made, they are subject to the observations of the Master of the Rolls, in *Lench* v. *Lench, supra,* "in all cases most unsatisfactory evidence, on account of the facility with which it may be fabricated, and the impossibility of contradicting it. Besides, the slightest mistake or failure of recollection may totally alter the effect of the declaration." See also *Garrett* v. *Garrett,* 29 Ala. 439. There seems to us special danger, in resting such an equity on the uncoroborated declarations of a husband made to his wife, in the privacy of domestic life. Less deliberation and care would be observed by him, than he would be expected to observe in declarations to another, to whom he was not bound by the ties existing between him and his wife, and to whom such unlimited confidence would not be extended, as to the wife. A fact not without its importance, is, that the appellant joined her husband in the mortgage to the appellees, without disclosing that she had any interest in, or claim to the premises ; nor did she ever assert any claim to them, until it was certain they must be sold in satisfaction of the mortgages.

If the equity of the appellant exists it was capable of clear and convincing proof. Lapse of time had not involved

[Bell *v.* Allen.]

the facts in obscurity. They were few and simple. The only moneys she could have had, must have been derived from the sale of her lands. If her lands or a part of them were sold and converted into the goods her husband carried to Birmingham, the fact was easily proved. If her husband obtained from the sale of her lands the money with which he made the cash payment of fifty dollars, it could have been shown. The fact would fairly have appeared, if it had been shown that immediately preceding the purchase, he had received that sum or a larger sum from the sale of her lands, and that he carried no other money with him when he went to Birmingham—a fact which would probably have been known to the witness Baggett. The appellant having the means of establishing clearly her equity, if it exists, should not have contented herself with a repetition of the declarations of her husband; especially as these declarations, so far as they refer to the improvements, are directly contradicted by the clerk.

We concur in the opinion of the chancellor, that the claim of the appellant is not supported by the evidence, and the decree must be affirmed.