(107 So. 909)

## CULVER v. A. A. GAMBILL REALTY CO.
### (6 Div. 558.)

(Court of Appeals of Alabama. April 7, 1925. Rehearing Denied May 12, 1925. Affirmed on Mandate Jan. 12, 1926.)

1. **Appeal and error** $\Longleftrightarrow$ **979(2)—Rule that appellate court will not ordinarily disturb grant of new trial on ground verdict is against evidence is inapplicable where facts undisputed.**

Ordinarily, appellate court will not disturb ruling of lower court in granting motion for new trial on ground verdict was against weight of evidence, though different rule applies where record shows trial court acted upon a misinterpretation of law as applied to undisputed facts.

2. **Brokers** $\Longleftrightarrow$ **86(1)—Evidence held to show broker was acting for purchaser, notwithstanding owner's agreement to pay commission in event of sale.**

Evidence *held* to show that broker suing for commissions was acting as representative of purchaser and not of owner, owner's agreement to pay commission in event of sale not changing status.

3. **Brokers** $\Longleftrightarrow$ **54 — To recover commission promised by owner, broker for purchaser must furnish buyer ready, willing, and able to complete purchase on owner's terms.**

In order for broker, acting for purchaser, to recover commissions which owner had agreed to pay him in event of sale, it was incumbent upon him to furnish buyer ready, willing, and able to complete the purchase upon the terms agreed to by owner in sale contract signed by him.

4. **Brokers** $\Longleftrightarrow$ **64(1) — Broker for purchaser held not entitled to commission promised by owner, where purchaser refused to complete purchase because of party wall; "incumbrance."**

Where owner contracted to sell building to purchaser free of all incumbrances, but purchaser on learning of party wall refused to complete purchase, *held*, broker, acting for purchaser, was not entitled to recover from owner commission agreed to be paid him, inasmuch as purchaser had breached sale contract; party wall not constituting an "incumbrance" within sale contract.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Incumbrance (On Title).]

Appeal from Circuit Court, Jefferson County; R. V. Evans, Judge.

Action for broker's commission by the A. A. Gambill Realty Company against F. P. Culver. From a judgment granting plaintiff's motion for a new trial, defendant appeals. Affirmed on mandate.

Certiorari granted by Supreme Court in Culver v. A. A. Gambill Realty Co., 214 Ala. 84, 107 So. 914, and further application denied 214 Ala. 375, 107 So. 917.

Lange & Simpson, of Birmingham, for appellant.

A real estate broker must produce a purchaser ready, able, and willing to buy, and an agreement on the terms of sale is not necessarily an acceptance of the proffered purchaser. Sayre v. Wilson, 86 Ala. 156, 5 So. 157; Birmingham L. & P. Co. v. Thompson, 86 Ala. 146, 5 So. 473; De Briere v. Yeend Bros., 204 Ala. 647, 86 So. 528; Francis v. Baker, 45 Minn. 83, 47 N. W. 452; Rike v. McHugh & Broom, 188 Ala. 237, 66 So. 452. The lack of a party wall agreement does not amount to a defect in a title. 27 R. C. L. 507; Hendricks v. Stark, 37 N. Y. 106, 93 Am. Dec. 549; Weadock v. Champe, 193 Mich. 553, 160 N. W. 564, Ann. Cas. 1918C, 874.

Leader & Ullman, of Birmingham, for appellee.

The defendant accepted, in writing, the purchaser produced by plaintiff. There was no necessity for further inquiry as to the readiness and ability of the purchaser, and plaintiff was entitled to recover. Handley v. Shaffer, 177 Ala. 636, 59 So. 286; De Briere v. Yeend Bros., 204 Ala. 647, 86 So. 528; Birmingham L. & P. Co. v. Thompson, 86 Ala. 146, 5 So. 473; Finney v. Newson, 203 Ala. 191, 82 So. 441. On producing a person who is ready, willing, and able to take property on terms prescribed, the broker becomes entitled to commission, whether or not the sale is consummated. Smith v. Sharpe, 162 Ala. 433, 50 So. 381, 136 Am. St. Rep. 52; Hutto v. Stough, 157 Ala. 566, 47 So. 1031; Sharpley v. Moody, 152 Ala. 549, 44 So. 650. The party wall constituted an encumbrance. Batley v. Foerderer, 162 Pa. 460, 29 A. 868; Ensign v. Colt, 75 Conn. 111, 52 A. 829, 946; Mackey v. Harmon, 34 Minn. 168, 24 N. W. 702; Burr v. Lamaster, 30 Neb. 688, 46 N. W. 1015, 9 L. R. A. 637, 27 Am. St. Rep. 428; Graves v. Smith, 87 Ala. 450, 6 So. 308, 5 L. R. A. 298, 13 Am. St. Rep. 60; 2 Washburn, Real Prop. (5th Ed.) 386; Tiedeman, Real Prop. § 620; 39 Cyc. 1501; 20 C. J. 1250.

SAMFORD, J. The plaintiff in the court below (appellee here) brought suit to recover $1,000 commissions claimed by him to be due from defendant (appellant here) on account of services rendered in the sale of certain real estate in Birmingham. On the trial there was much pleading, and finally on issue joined the cause was submitted to a jury on the facts and an elaborate charge of the court as to the law. There was verdict for defendant. On motion of plaintiff, one ground of which was the verdict was contrary to the great weight of the evidence, the court entered a judgment setting this verdict aside and ordering a new trial. From this judgment defendant appeals.

[1] Ordinarily, when a motion for a new trial is granted on the ground that the verdict is contrary to the great weight of the

evidence, the appellate court will not disturb the ruling of the lower court. McCluskey v. State, 18 Ala. App. 31, 88 So. 367. A different rule, however, prevails where the record shows that the trial court acted upon a misinterpretation of the law as applied to the undisputed facts. W. U. Tel. Co. v. Laslie, 17 Ala. App. 303, 84 So. 864.

The case at bar does not present the ordinary case of a real estate broker, representing a real estate owner in the sale of real estate placed with the broker for sale. On the contrary, the negotiations disclose a dealing "at arm's length" between plaintiff and defendant with reference to the sale of the property in question. Defendant owned certain real estate in Birmingham. This real estate was in the hands of a broker in Birmingham other than plaintiff. On August 15, 1921, plaintiff opened negotiations with defendant relative to a sale of this real estate by letter inquiring the best price and terms, and to this there was no answer. This letter was followed by wire to the same effect under date of October 19, 1921. On the same date defendant wired: "Price $35000.00, $5000.00, cash balance, one, two, three, four, five years, six per cent." Following the above, the negotiations proceeded with the following communications:

"Birmingham, Ala., Oct. 20, 1921.

"Rev. F. P. Culver, c/o First Methodist Church, Fort Worth, Texas: We are authorized offer you thirty one thousand your fourth avenue store six thousand cash balance on or before five years six per cent proposed purchasers note good as government bonds in addition you will have first mortgage on property sold Good Purchasers scarce Advise your decision by wire.          A. A. Gambill Realty Co."

"Fort Worth, Tex., Oct. 21, 1921.

"A. A. Gambill Realty Co., Birmingham, Ala.: Cannot accept your proposition.
                         "F. P. Culver."

"Birmingham, Ala., Oct. 21, 1921.

"Rev. F. P. Culver, c/o First Methodist Church, Fort Worth, Texas: Yours received declining proposition kindly wire us your lowest price.          A. A. Gambill Realty Co."

"Fort Worth, Tex., Oct. 21, 1921.

"A. A. Gambill Realty Co., Birmingham, Ala.: My first proposition stands or will accept thirty five thousand six thousand cash balance on or before five years six per cent interest payable annually in case interest not paid notes and mortgage will be matured.          F. P. Culver."

"Fort Worth, Tex., Oct. 22, 1921.

"A. A. Gambill Realty Co., Birmingham, Ala.: Have not authorized any one sell at thirty three thousand.          F. P. Culver."

"Birmingham, Ala., Oct. 22, 1921.

"Rev. F. P. Culver, Fort Worth, Texas: Telegram twenty first received advise if you have authorized price of thirty three thousand.
                         "A. A. Gambill."

"Birmingham, Ala., Oct. 24, 1921.

"Rev. F. P. Culver, Fort Worth, Texas: We haven't definite offer but believe can sell store thirty three thousand.          A. A. Gambill."

"Fort Worth, Tex., Oct. 24, 1921.

"A. A. Gambill, Birmingham, Ala.: Cannot take less than price I have named.
                         "F. P. Culver."

"Birmingham, Ala., Oct. 26, 1921.

"Rev. F. P. Culver, Fort Worth, Texas: Authorize offer thirty three thousand fourth avenue Store six thousand cash balance on or before five years six per cent payable annually stop interest on balance twenty seven thousand more than present rent proposed purchaser strong financially together with mortgage on property makes your security good as government bonds advise.
                    "A. A. Gambill Realty Co."

"Fort Worth, Tex., Oct. 26, 1921.

"A. A. Gambill Realty Co., Birmingham, Ala.: My price thirty five thousand your commission one thousand.          F. P. Culver."

"Birmingham, Ala., Nov. 1, 1921.

"Rev. F. P. Culver, Fort Worth, Texas: Our client refuses offer more than thirty three thousand fourth avenue property we will offer three hundred for option on property until June first price thirty four thousand net to you five thousand cash twenty nine thousand on or before five years six per cent payable annually secured by first mortgage.
                    "A. A. Gambill Realty Co."

"November 9, 1921.

"Rev. F. P. Culver, Fort Worth, Texas—Dear Mr. Culver: We wired you on the 1st inst. as follows: 'Our client refuses offer more than thirty three thousand fourth avenue property we will offer you three hundred dollars for option on property until June first price thirty four thousand net to you five thousand cash twenty nine thousand on or before five years six per cent interest payable annually secured by first mortgage.'

"We have not heard from you in answer to our telegram and have wondered whether or not you received it as you are always so prompt in replying.

"The proposed option suggested in our telegram of the first inst. above referred to is the exact price you authorized us to sell the property for as you will doubtless remember that you authorized us to sell for $35,000.00, $6,000.00 cash, and the balance on or before five years with interest at 6 % per annum, payable annually and secured by first mortgage on the property, and you were to pay us $1,000.00 for negotiating the deal.

"If you give said option it means that you have sold the property for the reason that we will try and protect our $300.00 put up as good faith and we, of course, would get credit for the $300.00 provided the option was exercised within the time limit.

"You are now getting a gross rental of $1,800.-00 per annum for your property, and you, of course, have to pay taxes, insurance and commission for collecting same which will reduce your net income to possibly $1,000.00 or $1,100.-00 and should you give us the option at $34,000.-00 net to you which is the same as selling for $35,000.00 and paying $1,000.00 commission

which you agreed to do, you will receive $5,-000.00 in cash and the mortgage of $29,000.00 which will net you $1,740.00 interest per annum which is seven or eight hundred dollars more than you are now getting net, and you will have no trouble or worries with reference to taxes, repairs, etc., and other annoyances that go with property that is owned by a person a thousand miles from the property.

"Trusting that you will give the above careful consideration and let us hear from you by return mail with reference to same, we are, with kind personal regards,·  Yours very truly, "AAG/J ·  A. A. Gambill Realty .Co."

"December 12, 1921.

"Rev. F. P. Culver, Fort Worth, Texas—Dear Sir: Your favor of recent date received in reply to our communication in which we offered you $300.00 for an option on your Fourth Avenue property, and you stated if the option was more attractive you might be interested.

"If you will give us on your fourth avenue property running to July 1, 1922, for and at the price of $34,000.00 net to you, we will pay you $500.00 for said option, and if said option is exercised we will, of course, get credit for the $500.00 otherwise you have made the $500.00 clear, with the understanding, however, that the property not be leased before that time for the reason our client might want to use the property individually, and three months is plenty of time to re-lease the property anyway.

"Should you decide to give us this option, we would pay you $4,000.00 in cash and give you a mortgage for $30,000.00 on said property, with interest at the rate of 6% per annum, payable annually. This proposition is just about the same terms that you agreed on· before when you authorized us to sell the property for $35,-000.00 and pay us $1,000.00 commission.

"Trusting you will let us hear from you by return mail with reference to same, we are, "Yours very truly, "A. A. Gambill Realty Co., "AAG/J  By ————, President."

"Birmingham, Ala., Jan. 25, 1922.

"Rev. F. P. Culver, Fort Worth, Texas: Offered Joe Kartus your fourth avenue property thirty five thousand six thousand cash balance on or before five years at six per cent authority given your telegram October twenty-first ready close deal when another agent offered Kartus same property thirty three Kartus our client wire if agent authorized to reduce wire price.  A. A. Gambill Realty Co."

"Fort Worth, Tex., Jan. 25, 1922.

"A. A. Gambill Realty Co., Birmingham, Ala.: Have authorized no one sell property at thirty three thousand.  F. P. Culver."

"Birmingham, Ala., Jan. 31, 1922.

"Rev. F. P. Culver, Fort Worth, Texas: Can sell building thirty five thousand six thousand cash balance on or before five years six per cent payable annually in order get this price we must guarantee lease five years and in order obligate ourselves should have two thousand commission but will take fifteen hundred answer by wire our expense.  A. A. Gambill Realty Co."

"Memphis, Tenn., Feb. 3, 1922.

"Gambill Realty Co., Birmingham, Ala.: F. P. ·Culver did not leave address with us.  "Western Union Tel. Co."

"Birmingham, Ala., Feb. 2, 1922.

"Rev. F. P. Culver, Fort Worth, Texas: Please reply our night letter January thirty first regarding sale.  "A. A. Gambill Realty Co."

"Memphis, Tenn., Feb. 3, 1922.

"Gambill Realty Co., Birmingham, Ala.: Your telegram sent me here. Will not accept your offer.  F. P. Culver."

"February 4, 1922.

"Dr. F. P. Culver, Fort Worth, Texas—Dear Mr. Culver: We·received your telegram of the 3rd inst. reading, 'Your telegram·sent me here will not accept your offer.'

"We had numerous communications to and from you in the month of October, three of which we wish to quote you as follows:

" 'Oct. 19th, 1921. Price thirty five thousand five thousand cash and balance one, two three and four years six per cent.'

" 'Oct. 21st, 1921. My first proposition stands or will accept thirty five thousand six thousand cash balance on or before five years six per cent interest payable annually in cash interest not paid notes and mortgage will be matured.'

" 'Oct. 26th, 1921. My price thirty five thousand your commission one thousand.'

"We have tried to represent you to the best of our ability, Dr. Culver, and we have represented you as we do other people with authority, and the authority to sell your property on the above terms and conditions has not been revoked, and your telegram of January 31st, and your reply of February 3rd, did.not withdraw your property from the market but gave no explanation of your intentions.

"We have spent a great deal of time and effort·trying to dispose of your property, and the reason and only reason that we suggested in our telegram of January 31st that a commission of $1,500.00 be allowed was that we are compelled to guarantee the proposed purchaser that the building çan be released at a certain figure for a term of five years, but to be frank with you we would much prefer taking one thousand dollars commission and give no guarantee than to take $1,500.00 and make the guarantee. We did not say to you that we could sell the property for $33,500.00 net, but told you plainly that we could sell it for $35,000.00 by making certain guarantees, and only requested that you pay us $1,500.00 commission, and we think the request a reasonable one.

"We are your representative in this transaction and you are the man we are looking to for our commission in a fair and intelligent way, and we think that we are entitled to a reasonable, fair and just reply with reference to the transaction we are negotiating. While we realize that you are a very busy man and we do not wish to annoy you, we are simply trying to make for you what we consider a splendid trade, and as a business man you must recognize that it is your interest to work with us for the purpose of assisting in closing the transaction.

"There is another agent in Birmingham who has, or claims to have, a letter from you in which you stated most positively that you will dispose of the property for and at the price of $33,000.00 with the understanding that the purchaser pay part of the taxes, or something of that kind, and a friend to the proposed purchaser stated to the writer that he had read·the

letter himself, and that only thing we could say when we were confronted with this proposition was that you had advised us that no agent, or agents, had authority to offer your property for $33,000.00 and that we had price of $35,-000.00 and it could not be sold for less.

"Trusting that you will give this matter consideration and wire us fully your position with reference to the transaction, we are,

"Yours very truly,

"A. A. Gambill Realty Company,

"By ————, President."

"February 6th.

"A. A. Gambill Realty Company, Birmingham, Ala.—Dear Mr. Gambill: I refused the offer made in your last telegram because your commission was $500.00 more than I had agreed to pay. About your having to make some guarantees in order to sell the property I know nothing and cannot take into the consideration of the sale.

"On your request, I told you what I would take for the property, you have not yet made me that offer. So I now revoke all previous offers that I have made to you relative to what I would take for the property.

"My last telegram to you was short because it was a telegram, and no discourtesy was meant at all. I am sorry if you think my replies have not been 'reasonable, fair and just.' I would not treat you unfairly or unjustly if I knew it. I know it is hard matter to trade at a great distance.

"I have named a price to only two firms, yours and Kendrick-Houseal who are my agents, and I know of no one who holds authority to sell my property for $33,000.00.

"If at any time you wish to submit an offer for the property, I will be glad to consider it.

"With kindest regards, I am,

"Yours cordially,                F. P. Culver."

"Birmingham, Ala., Feb. 17, 1922.

"Dr. F. P. Culver, Fort Worth, Texas: Will you authorize us sell your fourth avenue property thirty five thousand six thousand cash balance on or before five years six per cent payable annually with understanding that one thousand or any multiple thereof can be paid on any interest paying period answer by wire.

"A. A. Gambill Realty Co."

"Fort Worth, Tex., Feb. 18, 1922.

"A. A. Gambill Realty Co., Birmingham, Alabama: The property has been leased for three years.                .                F. P. Culver."

"Birmingham, Ala., Feb. 27, 1922.

"Dr. F. P. Culver, Fort Worth, Texas: Have contract signed fourth avenue property check up for one thousand dollars to bind deal price thirty four thousand five hundred dollars ten thousand cash payment balance twenty four thousand four hundred on or before five years six per cent one thousand or any multiple thereof payable any interest paying period answer.

"A. A. Gambill Realty Co."

"Fort Worth, Tex., Feb. 28, 1922.

"A. A. Gambill Realty Co., Birmingham, Ala.: I cannot take your offer.        F. P. Culver."

"Birmingham, Ala., March 1, 1922.

"F. P. Culver, Fort Worth, Texas: Have closed deal your fourth avenue property at your price thirty five thousand check up one thousand contract signed seventy five hundred cash balance on or before five years six per cent one thousand or any multiple thereof payable any interest paying period commission thousand confirm by wire.

"A. A. Gambill Realty Co."

"Birmingham, Ala., March 1, 1922.

"F. P. Culver, Fort Worth, Texas: Have closed your fourth avenue property at your price thirty five thousand check up one thousand contract signed seventy five hundred cash balance on or before five years six per cent one thousand or any multiple thereof payable any interest paying period commission thousand confirm by wire.

"A. A. Gambill Realty Co."

"Fort Worth, Texas.

"A. A. Gambill Realty Co., Birmingham, Ala.: Your offer accepted subject to conditions named in letter which follows.        F. P. Culver."

"Fort Worth, Texas.

"The A. A. Gambill Realty Co.—Gentlemen: I wired you last week accepting offer of $35,-000.00, $7,500.00 cash, for the fourth avenue property, and stating that letter would follow, giving certain conditions.

"As you have been advised, there is a lease now existing on the property, effective September 1st, for three years, providing for a rental of $200.00 per month, for the first year, $225.00 for the second year, and $250.00 for the third year. This lease was entered into with present tenants of the building.

"It is to be understood that the balance of the purchase price will be payable on or before five years from date, interest payable semiannually, at the rate of 6% per annum; with the further stipulation that failure to pay any interest payment when due shall mature the entire obligation.

"Insurance to be carried on the buildings to the amount of $10,000.00 payable to me as mortgage, as my interest may appear.

"Taxes for the year 1922 to be prorated.

"Abstract will go forward to you to-day, and will allow ten days for examination of title. You may send Deed to me for execution and Frank P. Culver, Jr., will be in Birmingham when parties are ready to consummate the deal, and close the matter up for me.

"Yours very truly,

"FPC–GV                F. P. Culver."

As a result of these negotiations, the following contract was prepared and signed by defendant and the purchaser:

"State of Alabama, Jefferson County.

"Know all men by these presents: That this agreement made and entered into by and between F. P. Culver, hereinafter termed and designated as the seller, and Carl Steiner, hereinafter termed and designated as the purchaser, witnesseth:

"That the seller agrees to sell and the purchaser agrees to buy that certain piece of property situated in the city of Birmingham, Jefferson Co., Ala., and being described as the E. half (½) of lot six (6) in block seventy-two (72) more particularly described as fronting 25 ft. on the southern line of Fourth Avenue North, between Eighteenth and Nineteenth streets, and extending back of that uniform width 140 ft. to a 20-ft. alley, together with all improvements

of every kind and description thereunto belonging or in anywise appertaining to said property.

"This day sold to the purchaser for the price and sum of $35,000.00, $1,000.00 of which is paid in cash, the receipt of which is hereby acknowledged and being part of the purchase price of said property, and $6,500.00 to be paid when the deed passes from the seller to the purchaser, and the balance, $27,500.00 to be paid on or before five years, with interest at the rate of 6% per annum, payable semiannually, and the purchaser will have the right and privilege of paying $1,000.00 or any multiple thereof on any interest paying period. Failure to meet any interest payment when due, shall at the option of the seller, mature the balance of the purchase price.

"It is further understood and agreed that the seller will furnish to the purchaser an abstract of title brought down to date on the property above described and the title is to be good and merchantable and free and clear from all liens and incumbrances of every kind and nature.

"It is understood and agreed that the taxes and insurance on said property are to be prorated up to and including the date on which the deed is delivered by the seller to the purchaser, which is to be not later than March 1, 1922, or as soon thereafter as merchantable title can be effected.

"It is further understood and agreed that the purchaser will insure and keep insured the premises in the sum of $7,500.00, having the policy made payable to the seller as his interest may appear.

"It is further understood and agreed that the above described property is sold subject to the present lease now in force, which expires October 1, 1925.

"In witness whereof, the parties have hereunto set their hands and seals this the 18th day of February, 1922.

"F. P. Culver. [Seal.]
"Carl Steiner. [Seal.]
"A. A. Gambill Realty Company,
"By A. A. Gambill, President."

After this contract was signed and Culver had sent his son with the executed deed to close the transaction, there arose a question as to a party wall between the property contracted and the adjoining property owned by Dr. T. B. Hill. This wall, it develops, was built on the line, one-half of which was on each lot, and was the dividing wall between two brick buildings, one on each lot. The purchaser refused to carry out his contract of purchase unless defendant would obtain from Hill a party wall agreement, claiming the party wall to be an incumbrance on the property. There was much negotiation on the part of plaintiff in an effort to get defendant to procure this agreement, or to reduce the purchase price. On May 3, 1922, plaintiff notified defendant that his purchaser would not complete the sale; after which defendant sold the property to another party.

[2-4] It will be observed that in this transaction the plaintiff was representing the purchaser. Never at any time pending the negotiations, covering a period of several months leading up to the signing of the contract of sale, was there any indication of an agreement that plaintiff was acting for and on behalf of defendant. True, the defendant agreed to pay $1,000 commission in event of a completed sale, but this in no wise changed the status of the parties. Propositions were made by plaintiff to defendant and rejected or accepted as made, and these propositions were not without argument and inducement to defendant to accept a smaller amount. If there was any doubt as to whom plaintiff was acting for, his letter or wire of November 1, 1921, where he refers to the purchaser as "our client," would seem to eliminate all doubt. It was therefore incumbent upon the plaintiff to furnish a buyer, ready, willing, and able to complete the purchase, upon the terms as agreed to by defendant in the contract of sale which was signed by him. That plaintiff stood ready to do this is admitted, unless it was incumbent upon him to obtain at his own expense the agreement as to the party wall, without which the purchaser and plaintiff claimed an incumbrance avoiding the sale contract, and failing which the purchaser declined to proceed. The question resolves itself to this: If the party wall was an incumbrance within the meaning of the terms of the sale contract, then plaintiff should recover, for in that event defendant would have breached his contract of sale; if the party wall was not such an incumbrance, then the purchaser breached the contract and plaintiff had thereby failed to furnish a purchaser ready, willing, and able to carry out the terms of purchase.

In 27 R. C. L. at page 507, it is laid down as a general rule that—

"In the case of the sale of a city building the fact that the side walls are party walls does not constitute such an incumbrance or defect in the title as will relieve the purchaser from completing the purchase."

The title to be acquired by the purchaser extended only to middle of the wall between defendant's property and that of the adjoining property, and it is therefore obvious that the mutual easement for their support was a benefit and not a burden to the owners of both lots. As was said in the case of Hendricks v. Stark, 37 N. Y. 106, 93 Am. Dec. 549:

"It was a valuable appurtenant, which passed with the title of the property, and its value to him was not diminished by the fact that it was equally beneficial to the adjacent owners." Hendricks v. Stark, supra; Eno v. Del Vecchio, 11 N. Y. Super. Ct. 53; Partridge v. Gilbert, 15 N. Y. 601, 69 Am. Dec. 632; Graves v. Smith, 87 Ala. 450, 6 So. 308, 5 L. R. A. 298, 13 Am. St. Rep. 60.

Further authorities as to this proposition may be found in 93 Am. Dec. page 551. There are some authorities which hold that a party wall agreement which would require the purchaser to keep up or maintain the wall would

be an incumbrance, but this is not so if the easement has been released or extinguished, or if the purchase is expressly or impliedly made subject thereto. 39 Cyc. 1503.

Under any phase of the testimony as shown by this record, the defendant was entitled to the affirmative charge, and therefore the verdict of the jury could not have been contrary to the great weight of the evidence.

The other rulings presented in the motion for new trial are not argued by either party, and therefore we do not consider them specifically. Suffice it to say, in view of what we hold above, all of them would be immaterial.

The judgment is reversed, and the cause is remanded that the trial court may enter judgment in conformity with the foregoing opinion.

Reversed and remanded.

PER CURIAM. The original opinion in this case is based upon the assumption that the Gambill Realty Company was not the broker of Culver, who undertook to furnish a purchaser for Culver's property, but in all of the negotiations the Gambill Realty Company acted for and on account of the purchaser, and therefore the decision in this case did not in any way contravene the decision in the case of Birmingham L. & L. Co., v. Thompson, 86 Ala. 149, 5 So. 473. The principle announced in that case is fully recognized by this court in the original opinion. As to this holding, the Supreme Court on certiorari is at variance with this court as expressed in the opinion of Miller, J., on application for rehearing (107 So. 914[1]), which under the statute must control the decision of the Court of Appeals.

It is to be observed that a majority of the Supreme Court do not express their views as to whether or not a party wall is an incumbrance on the property, the opinion of Mr. Justice Miller on that particular point being concurred in by only one of the justices.

It would therefore appear that the effect of the holding in this case is to submit the question of agency as between Gambill and Culver to the jury.

Upon the authority of Culver v. A. A. Gambill Realty Co., 6 Div. 464 (Ala. Sup.) 107 So. 914,[1] the judgment in this case is affirmed.

Affirmed.

