23 So.2d 869

## SINCLAIR REFINING CO. v. ROBERTSON.
### 8 Div. 463.

Court of Appeals of Alabama.
June 26, 1945.

Rehearing Denied Aug. 7, 1945.

P. W. Shumate, of Guntersville, for appellee.

Marion F. Lusk, of Guntersville, for appellant.

RICE, Judge.

The suit is on a stated account. The issues presented by the pleadings were submitted for the jury's consideration. The verdict was for the plaintiff, and judgment followed accordingly. Defendant's motion for a new trial was duly presented, and after consideration by the trial judge, the judgment was set aside and a new trial granted. From the ruling granting the motion for a new trial the plaintiff has prosecuted this appeal.

The account was for fuel oil, intended for a Diesel engine, sold by the plaintiff, Sinclair Refining Company, to the defendant Robertson the latter part of October through November 4, 1938, for use in the defendant's boat, known as the "Robert R," which was operated by the defendant between the points of Joliet and Chicago, Illinois. The suit on the stated account was instituted in November, 1943, with the principal defense interposed to the effect that the fuel oil sold and delivered for use in a Diesel engine and motor was defective

and unfit for use in such a motor, resulting in damage thereto, and certain stated loss incurred by the defendant on account of injury to the motor by reason of such defective oil. Defendant further insisted that plaintiff knew that the oil was being purchased for use in a Diesel engine.

The itemized account duly sworn to was not disputed by the defendant, nor did he insist that any payment had been made thereon. His sole reliance was as above indicated, that is, that the fuel oil was defective and caused damage to his motor.

Plaintiff replied with two propositions. First, it insisted that after the matters alleged in these special pleas, defendant acknowledged in writing the correctness of the account; and second, that the real trouble with defendant's motor was the improper mixing of lubricating oil with the fuel oil without notice to plaintiff of the experiment, the replication alleging in this respect that this was contrary to good engineering practice. As previously stated, these issues the court in its oral charge submitted to the jury for their consideration.

As stated by able counsel for the plaintiff, it is clear that the only ground upon which the trial court rested its judgment granting the new trial was that the verdict was contrary to the evidence. 15 Ala.Dig., New Trial, ⊕127, 128.

The rather stringent rule by which this Court is guided in considering the action of the trial court in matters of this nature, stated in Cobb v. Malone, 92 Ala. 630, 9 So. 738, is well understood and has been often reiterated in decisions, both of the Supreme Court and of this Court, and requires no repetition here. Numerous cases are to be found noted in 2 Ala.Dig., Appeal and Error ⊕1015(1), p. 793 et seq. To these may be added: American National Bank v. Powell, 235 Ala. 236, 178 So. 21; Carraway v. Graham, 218 Ala. 453, 118 So. 807; Templeton & Son v. David, 233 Ala. 616, 173 So. 231; Twinn Tree Lumber Co. v. Day, 181 Ala. 565, 61 So. 914; Castleberry v. Morgan, 28 Ala.App. 70, 178 So. 823; Pitts v. Bethea, 31 Ala.App. 294, 15 So.2d 311.

Counsel for plaintiff, recognizing the force of this rule and its application to the instant case, rests his argument for reversal upon the theory that a different rule here applies, for the reason that the evidence was not in conflict, and that in fact the undisputed evidence would have justified the giving of the affirmative charge for the plaintiff under the issues framed by the parties. Culver v. Gambill, 21 Ala.App. 222, 107 So. 909; Pitts v. Bethea, supra.

The testimony supporting the defense rested upon that of the defendant himself and the engineer, who was at the time in his employ—though at the time of the trial had no connection with the defendant. This engineer, Mohlenhoff by name, a resident of Illinois, duly qualified as a marine Diesel engineer who had attended the Hemphill Diesel School in Chicago, Illinois. In 1938 he was in defendant's employ as chief engineer operating the boat known as the "Robert R," the route being between Joliet and Chicago. He had been so operating this boat since the spring of 1937. The engine had been performing satisfactorily, and in fact, at the time of the delivery of this fuel oil it had just been overhauled. The engineer states that it was in excellent condition, and that at the time of the delivery of this oil, nothing wrong had been discovered with the operation of this motor. This Diesel fuel was taken on from the plaintiff company at Joliet, Illinois, on or about November 4, 1938—he estimates between 300 and 400 gallons—and that after this oil was put in the Diesel engine it soon began to miss on some cylinders; and what is known as the "spray nozzles" became stuck. As he would clean one spray nozzle, another would stick. "We kept doing that, fighting that, until my patience almost got the best of me, but I kept on anyway. What I got around to finding out was, the fuel didn't have enough lubricant in it. It was too dry, which caused those needles on the guides in the spray valves to stick. They were also scored and pitted." The word "scored," it seems, indicates some foreign substance that does not belong in the fuel oil. He testified that for several hours he tried to operate with that fuel.

In answer to the inquiry, he gave it as his opinion that the fuel oil was too dry, lacking enough lubricant. It may also have had some foreign substance in it, but no test was made. He tried to operate this boat for a part of three days, when at last the oil was drained out and thrown into the river and different oil substituted. The details as to the parts which were removed and carried off to Ohio for repairs and replacement need not be here stated.

It developed on cross-examination that in the attempt to get the boat into opera-

tion, the engineer did undertake to mix some lubricant with that fuel. How much he does not say, nor are we otherwise informed. The fuel oil which was purchased was supposed to have in it the lubricating quality, and it was the engineer's opinion that this particular oil was dry, that is, it was lacking in this lubricating quality. He stated further that the regular motor lubricating oil which he put into the engine (which he thought was from the plaintiff company) was not the oil which was intended as a lubricating oil for this kind of fuel, as the fuel oil purchased is supposed to have its own lubricant.

Counsel insist that this admission established the truth of his replication, which was to the effect that the lubricating oil placed in the engine by the engineer was contrary to good engineering practice; and that the affirmative charge might well have been given for the plaintiff upon that theory. We are persuaded, however, that the trial court properly submitted this issue to the jury. Mohlenhoff qualified as an expert Diesel motor engineer. From his evidence the jury might well have inferred that he had placed his finger upon the deficiency in the motor oil, that is, its lack of lubricating quality, and that this deficiency produced the trouble. From his evidence the jury could see that he was making every effort—he and his assistant engineer—to remedy the defect, and evidently, as experts in their line, reached the conclusion that lubricating oil might tend to remove the trouble. Certainly, the admission that in the course of working on the engine he had put some ordinary lubricating oil therein, is not an admission that it was contrary to good engineering practice, though it was not intended for such use, for the simple reason that the fuel oil purchased is supposed to have its own lubricant.

A careful study of this record persuades us that that issue was properly submitted for the jury's consideration.

The other theory upon which plaintiff insists it was entitled to the affirmative charge was the alleged acknowledgment in writing by the defendant of the correctness of the account. In support of this insistence is the statement sent to the Robertson Lines, Joliet, Illinois, by the plaintiff showing a debit balance on the books of the company, as of March 31, 1939, for $467.35. Stamped across this statement is the statement: "This is not a request for payment." And the statement contains expressions to the effect that it was merely for the purpose of comparison with the books and for the verification of the accounts. A bank space was left for signature, and was signed by the defendant. The defendant had been doing considerable business with the plaintiff, with accounts at times running ($800 or $900 monthly) largely in excess per month of the amount here sued upon. He testifies that he had no trouble with his engine, and that it was in excellent condition just prior to taking on this motor fuel. He received a report the same day the oil was placed in the motor—indeed, got a report several times that day as well as the next. After three or four days the operation of the boat ceased. The defendant had a conversation with the agent of the plaintiff company. The company at that time had an expert engineer for the purpose of servicing motors. When he called the plant to tell them about the trouble, he was assured that they would send a man right over. He was speaking to Mr. Hart's office, who was agent for the plaintiff, who had an office in Joliet. He called by 'phone and told Hart they were in trouble, and thought it was their fuel, and Hart replied: "I'll send a man over." Defendant stated he discovered, however, that the expert which they had was on two other boats of another company trying to get them going. The service man did not come, and he took the parts himself to Ohio for repairs.

Defendant further states that shortly after November 4, 1938, the date of delivery of this oil, he had two or more conversations with Hart, the plaintiff's agent—one on the boat, the other at the office—in which the defendant told Hart that if he could get some adjustment for the damage, he would be glad to make settlement of whatever it was, but that he would have to have an adjustment before he would pay any of it. To this Hart replied that he didn't have the authority, but would take it up with the company; and in a later conversation he received a like reply. The jury might well infer all this statement was a bookkeeping matter to balance accounts and no acknowledgment of correctness otherwise.

Considering all this proof and the running account between these parties, we are of the opinion that it was for the jury to say whether or not the mere signing of the statement referred to was sufficient

216

proof of this replication to justify an affirmative charge in plaintiff's behalf. We conclude, therefore, that the court also properly submitted this matter for the jury's determination. We have given consideration to the argument of counsel and the authorities cited, and have considered the record with much care.

Our conclusion is that the action of the trial court in granting the motion for a new trial should be here affirmed.

Affirmed.