38 So.2d 479

## THORNTON v. RODGERS.

### 6 Div. 780.

Supreme Court of Alabama.
Jan. 20, 1949.

James H. Bradford and Jackson, Rives & Pettus, all of Birmingham, for appellant.

H. L. Anderton, of Birmingham, for appellee.

STAKELY, Justice.

This is an appeal from a decree of the equity court overruling the demurrer to the bill of complaint. Two questions are presented, (1) whether an alleged resulting trust is barred by laches or the statute of limitations and (2) whether the claim of a resulting trust has been concluded by agreement between the parties.

J. L. Thornton (appellant) and Alice Thornton Rodgers (appellee) were married November 12, 1913. They lived together as man and wife until he obtained a divorce from her in Reno, Nevada, on or about November 6, 1943. Attached to and made a part of the divorce decree is an agreement entered into between the parties. The agreement will appear in the report of the case.

On June 17, 1925, J. L. Thornton after consultation with his wife and with her consent took $3,000 of her separate estate which came to her from Birmingham Gas Company as damages for personal injuries suffered by her in a gas explosion and invested this money with about the same amount of his own in real estate. Thereafter he retained and reinvested these funds and the increase thereof in other properties for their benefit and according to their agreement. Being in the real estate and construction business, he continued to build and sell, using the funds

for that purpose until he thereby accumulated considerable properties. He took title in his own name.

Without having repaid to her the original $3,000 or any part thereof or the increase therefrom, eighteen years after he took his wife's money, he obtained the divorce as aforesaid and soon thereafter remarried. At that time she was an invalid in a rolling chair and on crutches and suffered from severe arthritis with which she had been afflicted since 1936, so that she was physically and mentally unable to attend to her business affairs. It is alleged that she signed the agreement attached to the divorce decree while she was suffering and confused and without realizing the significance of what she was doing, that she did so without independent advice and in fear that he would drive her out of a place to live. She remarried in 1947.

The properties in which the alleged investments were made are described in the bill of complaint and include the house in which Alice Thornton Rodgers now resides and which is referred to in the agreement attached to the aforesaid divorce decree. Appellant has contracted to sell this particular piece of property and has given appellee two notices to vacate it. We set out the following portions of the bill.

"Complainant shows to the Court that before making the original investments as above set forth respondent discussed with her each and all said investments and received her consent and approval that said investments be made and that he discussed with her (his wife) all sales and reinvestments of the said original investments and received her approval of the same from the time of said original investments to the time he began to plan to get the Reno divorce in 1943, during which time respondent never at any time questioned complainant's said interests in the properties.

"Complainant avers that at no time after respondent invested her said separate estate in the original properties and before he revealed to her his plan to divorce her in 1943 did he ever at any time assert any adverse rights to or interest in the equities of complainant which accrued to her because of his investment of her said separate estate. At no time during that period did respondent say to complainant, or by word or action indicate to complainant, that he did not intend to keep in trust and render back to complainant her said interest in the original properties or in the properties of the reinvestment. She had no notice nor knowledge of respondent's purpose or plan to deprive her of her interest in said properties until he prevailed on her to sign the agreement dated November 9, 1943, preparatory for obtaining said divorce, in which he was to give her $85.00 a month to live upon, and which provided that the home alloted her could be shifted around on certain conditions, and which provided that even those privileges would not be effective unless he succeeded in obtaining the contemplated divorce from complainant. Up to this time complainant believed that on account of her trust in respondent and the confidential relations between them as husband and wife respondent would so conduct the business as to repay to her her equitable interest in all properties in which they were jointly financially interested. * * *

"Before complainant turned over to respondent her said separate estate of $3,000.00 for him to invest for her along with his money, they discussed the advisability of complainant's thus investing her said money and respondent told complainant he would take care of her interests in the investments thereafter made. After she turned over her said $3,000.00 to respondent for the investments they moved from place to place on the properties which complainant purchased and sold with their funds and on these occasions respondent told complainant, his wife, that he was taking care of her interests for her. On some of these occasions he said in effect if not in the exact words, 'you need not worry, I am looking after your interests to the properties.'"

██ It is a settled principle that a "resulting trust will be decreed in favor of wife where husband invests her moneys in real or personal property and takes title in his own name." Mandelcorn v. Mandelcorn, 228 Ala. 590, 154 So. 909, 911, 93 A.L.R. 322. And in such a situa-

tion where a resulting trust is sought to be established, the wife may either charge the property with payment of the money or claim the property itself. Tilford v. Torrey, 53 Ala. 120, 122 ; Nettles v. Nettles, 67 Ala. 599. If only a portion of the purchase money belonged to the wife, a resulting trust arises to the extent of the sum so used. Haney v. Legg et al., 129 Ala. 619, 30 So. 34, 87 Am. St. Rep. 81. Under the allegations of the present bill, a resulting trust certainly arose.

■■ It is clear that the trust in the present case arose in 1925 when J. L. Thornton took his wife's money, invested it and took title in his own name. Ordinarily, without more, the fact that J. L. Thornton had the property conveyed to himself would constitute such a repudiation of his trust relation to his wife that he would from that time be regarded as holding adversely to her. Robinson v. Pierce, 118 Ala. 273, 24 So. 984, 45 L.R.A. 66, 72 Am. St. Rep. 160; Brackin v. Newman, 121 Ala. 311, 26 So. 3. And the statute of limitations would run from such repudiation. Chambless v. Kennamer et al., 214 Ala. 293, 107 So. 908; Robinson v. Pierce, supra; Haney v. Legg, supra; Brackin v. Newman, supra. So if the statute of limitations in the case at bar began to run on June 17, 1925, then this suit, which was instituted on March 10, 1948, would be barred by the prescription of 20 years. Prescription is a rule of repose and rests on the principle that demands unasserted for such length of time either were not based on justice or had been adjusted. Oxford v. Estes, 229 Ala. 606, 158 So. 534.

But the foregoing principle has its exception. In the case of Nettles v. Nettles, supra, this court said: "It is true, as a general rule, that where the relation of trustee and cestui que trust is uniformly admitted to exist and there is no assertion of adverse claim or ownership by the trustee, lapse of time can constitute no bar to relief."

In the case of Haney v. Legg, supra [129 Ala. 619, 30 So. 36], this court said:

"Here no hostile claim was asserted by the husband, but a distinct and unqualified admission by him of her superior right and ownership. Manifestly, 'on this state of facts, the statute of limitations, which is founded upon an adverse, hostile claim of ownership, is no defense.

*  *  *  *  *  *

" 'When a trust is imposed by law, as in the case of a resulting trust, the statute [of limitations] begins to run in favor of the holder of the legal title against the equitable owner at the time of the conveyance, if there is no recognition of the cestui's rights; if his rights are recognized, then at the time when the holder of the legal title begins to hold adversely.' "

See Van Antwerp v. Van Antwerp, 242 Ala. 92, 5 So.2d 73.

In the case of Chambless et al. v. Kennamer et al., supra [214 Ala. 293, 107 So. 909], cited by appellant, according to the opinion, the wife had full knowledge of the manner of the execution of the deed to the husband and acquiesced therein and "in the absence of allegation to the contrary, it must be assumed that such was the case."

In the case of Brackin v. Newman, supra, cited by appellant, years before the suit the then living husband took possession of said lands and continued in possession thereof claiming them as his own, which was known to his wife.

The allegations of the bill which have been set out show that before making the original investments as well as the reinvestments, J. L. Thornton discussed with his wife each and all of the proposed investments and received her consent and approval and never at any time questioned her interest in the properties until the Reno divorce decree in 1943. On making the various investments he told his wife that he was taking care of her interest in the properties and that she need not worry. In the case at bar, according to the bill, the husband did not openly and publicly claim the property as his own. On the contrary he admitted the property belonged to his wife and assured her he was taking care of her interests as he invested.

We conclude that neither laches nor the statute of limitations began to run against the claim of appellee until 1943. Accord-

558

ingly there is no bar to her claim on account of laches or the statute of limitations.

■■ This brings us to the agreement made between the parties and embodied in the Reno divorce decree. The agreement was to become effective only in the event a divorce decree was granted and was made in order to remove the matter of support and maintenance from the field of litigation. Such an agreement is not void and against public policy, as contended by appellee, merely because it was made in contemplation of a divorce decree. Such an agreement is a practical way of adjusting property rights or controversies relating to support and maintenance in the event a divorce is granted. Sullivan v. Sullivan, 215 Ala. 627, 111 So. 911. We do not understand, however, that the agreement was intended to settle controversies of an unrelated nature such as the trust sought to be established in the present case.

But since the agreement appears to assume that J. L. Thornton is the owner of the two places in the City of Birmingham, referred to respectively as No. 5329 9th Avenue South and No. 5321 9th Avenue South, it is insisted by J. L. Thornton that this refutes the existence of a trust. We do not agree. The trust arose, if at all, when the investment was made. J. A. Owens & Co. v. Blanks, 225 Ala. 566, 144 So. 35; Merchants Nat. Bank of Mobile et al. v. Bertolta et al., 245 Ala. 662, 18 So.2d 378. If in signing the agreement in November, 1943, Alice Thornton Rodgers made an admission against interest, this subsequent admission will be taken along with all the other evidence to determine whether a trust arose when the alleged investment was made. 54 Am. Jur. p. 476; Warren v. Steer, 112 Pa. 634, 5 A. 4; 65 C.J. p. 440. In this connection the issue will be presented under the allegations of the bill whether the agreement was procured from appellee by duress when she acted without independent advice when she was ill and too confused to understand her action. The court acted correctly in overruling the demurrer in this regard.

Affirmed.

BROWN, FOSTER and LAWSON, JJ., concur.