ADAMS, Justice.
The defendants, Elois Sharper Hanks and the four minor children of Prank Sharper, deceased, appeal the judgment of the trial court that found a resulting trust and granted all right and title to a house and lot to the plaintiff, Winnie Sharper. Winnie Sharper had filed a complaint against the defendants alleging that she was the common-law spouse of Frank Sharper, and that a house bought in the name of Prank Sharper had been purchased for her with her funds. On appeal, the defendants concede the existence of a common-law marriage. They argue that Winnie Sharper failed in meeting her burden in establishing a resulting trust and that the trial court should have awarded to Winnie Sharper only a proportionate share in the house instead of the entire property. We agree and reverse and remand.
Winnie and Prank Sharper lived together as husband and wife from 1972 until his death on September 4, 1985. In 1975, Winnie Sharper paid $4,500.00 as a down payment on a house that was purchased subject to an existing mortgage. Due to some possible legal claims and on the advice of Winnie’s attorney, the title of the house was placed in the name of Frank Sharper.
Winnie testified that beginning in 1976, she gave cash to Frank for him to make the mortgage payments, and that except for one three-month period in 1984, he never made any of the mortgage payments from his own money. She also testified that she paid all the other household expenses. In 1980, Frank became disabled. His disability insurance was used to make mortgage payments for the following two years. Winnie testified that after the disability insurance payments ended, she had made the mortgage payments until Frank’s death. As evidence that she had made the payments, Winnie introduced 14 checks to-talling $2,822.15. These checks were for the period from 1983 to 1985.
The defendants’ evidence showed that Frank worked for a fraternity at the University of Alabama, and that he also ran a nightclub. The defendants showed that from 1976 to 1980, the fraternity made *1368 direct payments on the mortgage totalling $8,012.28. However, these payments were not made every month during this period. Frank’s daughter, Elois Sharper Hanks, testified that on two occasions she sent money to her father to make the mortgage payments. After Frank died, a credit life insurance policy paid the balance on the mortgage.
This case was heard by the trial court sitting without a jury. Winnie presented evidence that she had made the down payment, and, with the exception of three monthly payments, had supplied all the funds for the monthly payments. However, she could only produce 14 cancelled checks totalling $2,822.15. On the other hand, the defendants presented evidence showing that from 1976 to 1980, mortgage payments totalling $8,012.28 were paid by Frank’s employer directly to the mortgage company from the salary Frank earned at the fraternity house. For two years thereafter, Frank’s disability insurance was used to make the mortgage payments. Finally, after Frank’s death his credit life insurance policy paid the remainder of the debt.
It was the trial court’s duty to resolve the conflicting testimony. After receiving all the evidence, including documents and oral testimony, the trial court made no specific findings of fact, but ruled that a resulting trust existed for the benefit of Winnie. “Where evidence is presented to the trial court ore terms, a presumption of correctness exists as to the court’s conclusions on issues of facts; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Cougar Mining Co. v. Mineral Land & Mining Consultants, Inc., 392 So.2d 1177 (Ala.1981).” Gaston v. Ames, 514 So.2d 877 (Ala.1987). Because we conclude that the great weight of the evidence showed an intent that both Winnie and Frank would share ownership, if not record title to the property, we disagree and remand.
Where there is no intent to give legal title to one party and equitable title to another, no resulting trust should arise. See Marshall v. Marshall, 243 Ala. 169, 8 So.2d 843 (1942); Restatement of Trusts (1959), § 454. Furthermore, in order to establish a resulting trust, the “facts setting up the trust must be shown by clear and convincing evidence.” Strother v. Strother, 436 So.2d 847, 850 (Ala.1983) citing Sims v. Sims, 259 Ala. 296, 66 So.2d 445 (1953). The appellees argue that a resulting trust was formed in favor of Winnie at the time the house was purchased because this Court has written that “beneficial ownership must arise at the time of the purchase, when the status of title becomes fixed,” and that, “[sjince the trust arises from the payment of purchase money, such payment must ordinarily be made at the time of the purchase_” J.A. Owens & Co. v. Blanks, 225 Ala. 566, 144 So. 35, 36 (1932) (citations omitted). Thus, the appellees assert that because only Winnie contributed to the down payment and because the resulting trust was formed at the time the down payment was made and title was transferred, Winnie was entitled to a resulting trust for the entire value of the house.
Although the law is accurately stated by the appellees, intent is the primary issue in this case. When the deed for the house was transferred, Frank should not have obtained full title to the property; rather, Winnie and Frank should have been deeded the property as tenants in common. Although Winnie’s funds provided the down payment, there is evidence that, from the beginning, the intent of the parties was that both Frank and Winnie, as husband and wife, would make mortgage payments and would live in the home and would own it. Except for the fact that Winnie did not want her name on the deed because she feared a possible legal claim against her, both Winnie and Frank would have been named in the deed. Equity demands that this Court treat Frank and Winnie as tenants in common; then, a resulting trust can arise in favor of Winnie equal to her proportionate share of the purchase price. See Lamar v. Lamar, 263 Ala. 391, 82 *1369 So.2d 558 (1955); Thornton v. Rodgers, 251 Ala. 553, 38 So.2d 479 (1949).
Based on the foregoing, we remand this case to the trial court with instructions to determine what proportion of the total payments was made by Winnie, and what proportion was made by Frank. Winnie is entitled to her proportionate share of the value of the house.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur.