MARIA H. N. BARTLETT, as Executrix of EDWARD B. BART-LETT, Deceased, Respondent, *v.* WILLIAM W. GOODRICH, as Assignee of HENRY E. NITCHIE and ALBERT C. WOODRUFF, Individually, and as Surviving Partners of the Firm of E. B. BARTLETT & Co., Appellant.

TITLE TO PROCEEDS OF LIFE INSURANCE POLICIES AS BETWEEN PERSONAL REPRESENTATIVE AND SURVIVING PARTNERS OF INSURED — EVIDENCE — CONCLUSIVENESS OF FINDING. The evidence, in an action tried by the court, as to whether insurance policies taken out by a member of a firm upon his own life belonged to him at his death so that his personal representative was entitled to the proceeds, or were the property of his firm so that the right to the proceeds passed to the assignee of the firm under a general assignment made by the surviving partners, *held* to present a question of fact and to render a determination by the trial judge, affirmed by the General Term, that the deceased was, at the time of his death, the equitable owner of the policies conclusive upon the Court of Appeals — it not appearing, as matter of law, that the trial judge was not warranted, upon any fair view of the evidence, in finding as he did.
    *Bartlett* v. *Goodrich*, 91 Hun, 642, affirmed.

(Argued June 15, 1897 ; decided October 5, 1897.)

APPEAL from a judgment of the General Term of the Supreme Court in the first judicial department, entered January 7, 1896, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought by the plaintiff, as executrix, to recover the proceeds of certain policies of insurance upon the life of her testator, alleged to have been paid to the defendant by mistake.

The facts, so far as material, are stated in the opinion.

*John A. Deady* and *William G. Choate* for appellant. Upon the agreed and undisputed facts the policies of insurance, the proceeds of which are in contest in this case, were partnership property. (*Holmes* v. *Gilman*, 138 N. Y. 381; *Day* v. *Roth*, 18 N. Y. 448; *Fairchild* v. *Fairchild*, 64 N. Y. 474.)

*Frederic A. Ward* and *George W. Wingate* for respondent. The question in this case is one of fact. The court at Special Term has determined this question in plaintiff's favor, and its findings, having been approved by the General Term, are, therefore, conclusively established beyond review in this court. (*Crim* v. *Starkweather*, 136 N. Y. 635; *White* v. *Benjamin*, 150 N. Y. 258; *Cunningham* v. *Davenport*, 147 N. Y. 43; *Standen* v. *Brown*, 152 N. Y. 128; *Greenwood* v. *Marvin*, 111 N. Y. 436; *Hudson* v. *R., W. & O. R. R. Co.*, 145 N. Y. 408; Code Civ. Pro. § 1337; *In re Ross*, 87 N. Y. 514, 516; *Finney* v. *Gallaudet*, 23 N. E. Rep. 1113; 119 N. Y. 661; Const. N. Y. art. 6, § 9; *Croveno* v. *A. Ave. R. R. Co.*, 150 N. Y. 225; *People* v. *Turner*, 117 N. Y. 232.) There is no existing equity in favor of the defendant, as representing the firm of E. B. Bartlett & Co. and its creditors. (*Baron* v. *Brummer*, 100 N. Y. 372, 376, 377; *Holmes* v. *Gilman*, 138 N. Y. 369; *Case* v. *Phelps*, 39 N. Y. 164.) The alleged declarations contained in the undated letters of Bartlett do not constitute any trust or declaration of trust by him. (*Govin*

v. *De Miranda*, 29 N. Y. Supp. 345.) While no particular form of words is necessary for the creation of a trust in personal property or to constitute a gift, it is nevertheless necessary that the words or acts relied on to effect the creation of a trust or constitute the gift should be clear, unequivocal and explicit, and plainly imply that the party making them intended to divest himself of his interest in the property, and to hold it thereafter to the use and benefit of another. (*Young* v. *Young*, 80 N. Y. 422; *Barry* v. *Lambert*, 98 N. Y. 300; *Jackson* v. *T. S. R. R. Co.*, 88 N. Y. 520; *Millard* v. *Clark*, 27 N. Y. Supp. 631; *Meiggs* v. *Meiggs*, 15 Hun, 453; *Govin* v. *De Miranda*, 29 N. Y. Supp. 346; *Beaver* v. *Beaver*, 137 N. Y. 66.)

O'BRIEN, J. The plaintiff's husband and testator died on the 24th of May, 1894. At the time of his death he was a member of a mercantile firm, largely indebted, and on the 7th of June following his death the two surviving partners, Woodruff and Nitchie, made a general assignment for the benefit of creditors as such survivors, and individually, to the defendant. The plaintiff collected about $80,000 due upon policies of insurance upon her husband's life, which sum was paid to her by the several insurance companies as executrix. The defendant Goodrich was counsel for her husband in his lifetime, and stood in that relation to her, and was also assignee under the general assignment. The plaintiff upon his advice paid over to him the proceeds of the insurance upon the theory that the money belonged to the trustee under the assignment and not to the executrix under the will. It is conceded that the fund came to the hands of the assignee upon the faith of his advice, honestly given, that the same belonged to the creditors of the firm and not to the creditors of the deceased.

This is now the only question in the case, and since the widow paid over the money to the assignee voluntarily, upon his advice, it is agreed on all sides that no advantage is to be taken of that fact or any technical point raised on that ground. All objections to the right of recovery upon the merits are

waived, if in fact or in law the widow had the right originally to retain the money as the personal representative of her deceased husband.

The learned trial judge held that the plaintiff was entitled to recover, and the General Term has affirmed the judgment. There were no findings made as the result of the trial, but simply a brief statement of the ground of the decision. In this condition of the record we must presume that all facts warranted by the evidence, and necessary to support the judgment, have been found. (*Amherst College* v. *Ritch*, 151 N. Y. 282.) The appeal, therefore, cannot prevail unless it appears, as matter of law, that the learned trial judge was not warranted, upon any fair view of the evidence, in finding as he did, that the deceased was, at the time of his death, the equitable owner of the policies.

We are of the opinion, after a careful examination of the case, that the title to the policies, and to the moneys due thereon, presented a question of fact, and that the determination of that question in favor of the plaintiff by the trial court is conclusive upon this appeal. Having arrived at that result, we do not consider it important to refer to the evidence with much detail, since a statement of the most prominent features of the case will sufficiently indicate the nature of the question passed upon in the courts below, and disclose the reasons for our decision.

(1) It is undisputed that the policies were issued to the deceased in his own name, and made payable to him, his executors, administrators and assigns, and that up to the time of the assignment hereinafter referred to, he had the apparent legal title. It is quite true that the premiums were paid from the funds of the firm, but the deceased had furnished all the capital for the business, and there was always a large balance due to him upon the books of the firm. He had the right to draw against that balance, and it is quite immaterial whether he received a portion of it from the firm in cash, or applied it to the payment of premiums upon the policies. The result was that, in equity, he paid the premiums himself. Nor is it

important now that the premiums were not charged to the deceased upon the firm books, but credited in a special insurance account. The real nature and substance of the transaction did not depend upon the methods of bookkeeping adopted. It was a circumstance to be considered by the trial court, but, in view of the finding, it has ceased to be of much importance, and cannot be given any conclusive effect in the determination of this appeal. There is no question in the case with respect to the right of the deceased to divert a portion of the balance in his favor upon the firm books to the payment of the premiums. It is not claimed that any fraud upon creditors was committed or contemplated. The sole question is with respect to the title of the policies at the time of the death of Mr. Bartlett.

(2) It appears that on the 7th and 14th of March, 1887, the deceased executed written assignments of all the policies, not to the firm, but to Woodruff and Nitchie, "in equal shares to each, if our present partnership should be in existence at the time this policy shall become a claim. The share of either not then surviving to revert to the legal representatives of the insured, and in case of the dissolution of the copartnership, then the whole becomes payable to the legal representatives of the insured." The learned counsel for the respective parties who have argued the case in this court have made no very distinct statement of the purpose of this assignment. Perhaps it was not possible to do so under the circumstances. It is apparent, however, from the language of the assignment that the title was to revert to the deceased upon certain contingencies therein specified.

(3) On the 15th of July, 1890, Woodruff and Nitchie, as individuals, released and assigned to the deceased all interest in the policies, and thus the apparent title became vested in the deceased as fully as it had been before any of the assignments had been executed.

The firm was originally formed by written agreement to continue for three years from May 1, 1885, and, therefore, expired on May 1, 1888, on which date a new agreement was

made between the same parties but upon different terms.
This last agreement was canceled February 20th, 1890, and
another made upon other terms. It is not material here to
note the varying terms of these several agreements, but
nothing appears in any of them to indicate that the firm held
these policies as part of its assets, and the subsequent assign-
ment by the two partners to the deceased would seem to indi-
cate an intention to vest him with the title which he originally
held.

(4) Aside from the manner in which the premiums were
paid and the books kept, the contention of the learned coun-
sel for the defendant rests mainly upon admissions made by
the deceased in his lifetime to third parties to the effect that
the policies were for the benefit of the firm and statements
of like character in two undated letters found in an envelope
after his death with his will, one addressed to his wife, and
the other to Nitchie, his brother-in-law. The testimony is
quite consistent with the idea that these statements and admis-
sions were made and the letters written during the time that
Woodruff and Nitchie held the policies under the assignment.
Neither the verbal nor written statements convey any clear or
distinct idea as to what was in the mind of the deceased at the
time concerning the actual legal or equitable title to the poli-
cies. They are undoubtedly admissions on his part of more
or less force that he then considered the policies as available
in some manner for the use or credit of the firm. But they
were far from conclusive in view of all the other facts and
circumstances. The instruments were obligations payable on
their face to the deceased and virtually paid for with his
money. In the assignments and re-assignments he dealt with
them and treated them as his own property, and while the
admissions and statements relied upon by the defendant are
not without persuasive force, yet it was possible to explain
and reconcile them with a theory of the case consistent with
what appeared on the face of the papers.

How far they determined the real ownership of the fund in
controversy it was open to the learned trial judge to decide,

in view of the peculiar features of the case and all the surrounding facts and circumstances. The fund arises out of a promise made by the insurance companies to pay a certain sum of money upon a certain contingency which has happened. Beyond all doubt that promise was made to the deceased, who furnished the consideration for the same. Whether the beneficial interest in the promise had been transferred to another through the transactions set forth in the record was not a question of law but a question of fact. Even if it were true that it was the intention of the deceased that the policies should be used for the benefit of the firm, yet, such intention, until consummated by some valid transfer, would not, in a controversy involving nothing but a pure question of title or ownership, control the decision. Since there is no question of fraud or superior equities, the burden was upon the defendant to show, as matter of law, that the title to the policies passed to him upon the assignment. There was undoubtedly some conflict in the transaction, as it appeared by the papers which evidenced the promise and the statements of the deceased as shown upon the trial. There was room, possibly, for different conclusions and for opposing inferences, but these were questions for the consideration of the courts below, and we are bound to accept their conclusions under such circumstances. We do not think that the case presents any question of law that would warrant us in disturbing the result.

The judgment should be affirmed, with costs.

All concur, except GRAY, J., absent.

Judgment affirmed.