18 So.2d 378

**MERCHANTS NAT. BANK OF MOBILE et al. v. BERTOLLA et al.**

**1 Div. 212.**

Supreme Court of Alabama.

May 11, 1944.

Rehearing Denied June 22, 1944.

J. B. Blackburn and W. H. Hawkins, both of Bay Minette, for appellants.

663

Beebe & Hall, of Bay Minette, for appellees.

GARDNER, Chief Justice.

The original bill was by the Merchants National Bank, as administrator of the estate of Louis G. Bertolla, deceased; Helen S. Bertolla, the widow; and two minor children, represented by their mother as next friend. The bill seeks an accounting and settlement of the partnership known as A. Bertolla & Sons.

This partnership was dissolved by the death of Louis G. Bertolla, one of its members, and indeed, its managing head. The partnership was composed of five brothers. The surviving partners are the four brothers of Louis G. Bertolla, who are made parties defendant to this suit. It was a family affair in its origin, and so continued to the date of the death of Louis. It appears to have originated first with the father and five sons. Afterwards some of the daughters became interested in the firm, but their interest was subsequently acquired by these five brothers. To indicate to what extent this partnership was operated as a family affair, the averments of the bill disclose that numerous parcels of real estate were purchased with partnership funds for the benefit of the partnership, constituting partnership property, the title of which, however, was taken in the individual names of some of the members of the firm. This applied, not only to real estate, but to notes and mortgages, stocks and bonds. At the time of the death of Louis in February, 1941, there were stocks and bonds issued in his name which confessedly belonged to the firm and constituted partnership property.

The original bill was silent as to a policy of insurance in the New York Life Insurance Company insuring the life of Louis G. Bertolla in the sum of $25,000. The defendants, the four surviving partners, in their answer, have admitted the allegations of the bill in all material respects except in so far as the bill charged any necessity for legal proceedings to bring about a settlement of the partnership affairs. The answer disclosed that the defendants had only recently submitted to the complainants an offer of $66,625 in cash in full payment and complete satisfaction for the interest of the estate of Louis G. Bertolla, deceased, and also a conveyance of the home place of said Louis G. Bertolla, with all furnishings therein, and the automobile he was using. Such offer was renewed upon the filing of the bill and was accepted by the complainants.

Pursuant to agreement of the parties, the cause was submitted for decree carrying out the agreement, and final decree was rendered to this effect. The answer filed by the defendants was prayed to be taken as a cross-bill. It set up the fact that Louis G. Bertolla, in the years prior to his death, and while he was unmarried, took out an insurance policy with the New York Life Insurance Company; that this policy was obtained after a thorough discussion between the said Louis and the defendants herein; that it was on the life of Louis and was so obtained for the benefit of the partnership in order that cash might be immediately available in the event of his death, he being the manager and business director of the firm; that the premiums on the insurance were paid out of the partnership funds and that the policy was, and the proceeds thereof are, the properties of said partnership; that the Bank, as administrator, has collected and holds the proceeds of the policy in the amount of $26,972.63; that said sum of money is the property of the partnership, one-fifth of which should go to the estate of Louis G. Bertolla and one-fifth to each of the remaining four defendants, the surviving partners.

The policy of insurance on the life of Louis G. Bertolla, issued in March, 1928, was payable to the executors, administrators or assigns of the insured, with express reservation of the right on the part of the insured to change the beneficiary. When the final decree was rendered approving the settlement reached as set up in the answer, counsel for the respective parties agreed that the decree would settle all the equities between the parties except the ownership of the proceeds from this insurance policy, and that jurisdiction be reserved for the purpose of rendering such other and further orders and decrees as might be necessary to determine the ownership of these funds.

There was no demurrer interposed to the cross-bill, and the sufficiency thereof as a matter of pleading was in no manner questioned. Testimony was taken by way of depositions, and upon submission of the cause for final decree, the trial court concluded that the insurance policy on the life of Louis G. Bertolla was a partnership asset and the proceeds were

to be divided as partnership property pursuant to the prayer of the cross-bill. From this decree the complainants have prosecuted the appeal, and the only question here presented relates to the ownership of these funds.

■ The cross-bill is filed upon the theory of a resulting trust. That a trust may be created in personal property by parol, with no particular words required to accomplish the result, is well established in this jurisdiction. Lashley v. Lashley, 212 Ala. 255, 102 So. 229.

■ We recognize also the well-established rule that when such trusts are supported and enforced, it is only upon plain and convincing evidence; and the authorities generally also hold a closer correspondence must be had between the pleadings and the proof than in ordinary cases. Patton v. Beecher, 62 Ala. 579; Lehman v. Lewis, 62 Ala. 129; Miles v. Rhodes, 222 Ala. 208, 131 So. 633; Owens & Co. v. Blanks, 225 Ala. 566, 144 So. 35.

We are cited by counsel for appellants to a number of authorities in other jurisdictions denying relief upon the proof, which cases have been read and duly considered. Among these authorities are: Fee v. Wells, 65 Colo. 348, 176 P. 829; Bartlett v. Goodrich, 153 N.Y. 421, 47 N. E. 794; Vieth v. Chicago Title & Trust Co., 307 Ill.App. 99, 30 N.E.2d 126; Proctor v. MacClaskey, 278 Mass. 238, 179 N. E. 600; Zolintakis v. Orfanos, 10 Cir., 119 F.2d 571. These cases merely demonstrate the effect of the rule requiring strict proof in cases of this character.

Counsel direct attention to the fact that on second appeal in Lashley v. Lashley, 219 Ala. 312, 122 So. 314, relief was denied, but this authority also merely demonstrates how closely the courts scrutinize the evidence in this character of cases. Some of these authorities likewise are to the effect that the mere declarations of assured, made to strangers after the issuance of the policy are inadmissible to vary its terms and establish a trust in the proceeds in favor of another. See Fee v. Wells, supra; Wason v. Colburn, 99 Mass. 342. But the rule of these cases is inapplicable here. In Fee v. Wells, supra [65 Colo. 348, 176 P. 832], the Colorado Court merely held that "in civil cases one cannot be held liable upon a claim based solely upon hearsay conversations against interest with strangers, without some proof to establish that such a claim previously existed."

■ We recognize the correctness of this holding. The trust must arise at the time the title passes—as in this instance, upon the investment of the funds in the purchase of the policy. If there is no sufficient proof upon which to establish the trust as an original proposition, subsequent declarations of the insured will not suffice. Miles v. Rhodes, supra; Phillips v. Phillips, 240 Ala. 148, 198 So. 132; Owens & Co. v. Blanks, supra.

But once evidence is produced tending to establish the resulting trust, the verbal declarations or admissions of the insured are admissible as evidence against those claiming under him. Lehman v. Lewis, supra; Lashley v. Lashley, 219 Ala. 312, 122 So. 314.

■ As pointed out in the recent case of Marshall v. Marshall, 243 Ala. 169, 8 So.2d 843, the rule of resulting trusts depends upon equitable presumption of intention, and it is the settled general rule that presumably when land or other property is purchased by one with the money of another, a trust results to him who advances the purchase money thereof, the title being taken in the name of the person making the purchase or in the name of a third person. That is the simple theory upon which this case rests.

When this policy was procured by Louis Bertolla insuring his own life and payable to his estate, he was a single man. The partnership, as observed, was a family affair. And after discussion with his father and members of the family and the insurance agent who wrote the policy, it was decided that the policy thus secured would answer all purposes for the partnership. Viola Bertolla, a sister of the insured and of these defendants (who at one time was interested in the firm but who had, with the other girls, previously sold her interest), testified as to this partnership being a family affair, and that after the father's death the girls conveyed their interests to the five brothers. She remembers when the policy on the life of Louis in the New York Life Insurance Company was taken out. She states that Louis discussed the matter of going ahead with the business with the father and the question of taking out insurance. Louis thought it should be taken out in order

to protect the firm. He discussed this matter with the father and with the family. The father thought that it would be better to divide the insurance among all the boys and let each carry so much. But Louis was to be the managing head, and he thought it best to take the $25,000 policy on his own life "because if something happened the company would feel it more than if it happened to some other one of the boys * * * and he felt like he should carry $25,000 on his own life."

A large part of the business of the company involved the shipment of produce, and many carload shipments on consignment were made, and considerable money was tied up in these shipments. The policy was taken out, as thus understood, and the premiums paid by the partnership. They were paid with checks drawn on A. Bertolla & Sons—all of them. We have alluded to the fact that this partnership was so intimately a family affair that the large holdings, both in real and personal property, stocks and bonds, were acquired in the same manner; that is, title taken in the name of some one or more of the boys and paid for with partnership funds. All of this was partnership property.

This policy was delivered to Louis there at the place of business and afterwards placed in a safety deposit vault in the bank at Mobile, to which he and another brother had access. It was in this safety deposit box that the policy was at the time Louis died. As we have previously observed, the policy taken out when Louis was unmarried would have served the purpose, after all, for the benefit of this family partnership. One Charles Ebert was the agent representing the New York Life Insurance Company and the one who wrote this policy. He testifies positively to the fact that the insurance was taken out for the benefit of the partnership: "He said he wanted to take it out so that in the event of his death the money would be paid to his firm and his estate; at that time he was a single man." Ebert had conversations with him after his marriage, and in these conversations he still insisted he was carrying that insurance for the protection of A. Bertolla & Sons. And just a year before he died he repeated to Ebert that he was carrying this insurance for the benefit of the firm. Speaking of the time this policy was issued, Ebert's testimony continues: "I suggested he make it to A. Bertolla & Sons, and then after some discussion we decided it was just as well to leave it to his estate, as he was a single man; that his father and brothers would receive the money just as if it was left to A. Bertolla & Sons."

Numerous witnesses testified to declarations by Louis at different times and places to the effect that this policy was taken out for the benefit of the firm. Indeed, his widow, now Mrs. Jacobs, one of the complainants in this cause, admitted that Louis did make statements that the insurance was made payable to A. Bertolla & Sons. He made that statement many times, but she insists that it was in the presence of some of his family, and that when the two were alone he would merely tell her that she need not worry, that she would be well taken care of. And she admits in her testimony that in the settlement of the partnership affairs in the amount of cash she received for Louis' interest she was "well taken care of."

Dr. Jordan, who had been the physician of Louis throughout the years, testified that Louis told him time and again that this policy was taken out for the company and to take care of any losses the partnership might suffer should anything happen to him, and that he told him this also just a short while before he died.

Witness Stevens has for a number of years been representing as agent the New York Life Insurance Company. He likewise discussed this matter with Louis. The last conversation was during his illness, and not long before his death. Louis told him that the policy was taken out to protect the firm in the event of his death, with some detail as to the reasons supporting that course. In one conversation a year or two before he died Louis inquired whether or not he could change the beneficiary to his wife if he wanted to. Stevens told him that he could. His testimony continues: "He told me when I came back to see him the next time that he had decided not to name the wife as beneficiary, that he wanted his brothers to have the benefit of the insurance. He told me that he had made other provisions for his wife and children, and didn't want to change the insurance." Stevens told him that the record showed that his estate was the beneficiary; and he wrote a letter to the company to substantiate his statement, but Louis insisted they were wrong, that the business was the bene-

ficiary. He specifically stated that he "wanted the boys to have it."

In Section 32, Title 43, Code of 1940, is the following: "Property, whether real or personal, acquired with partnership funds, is presumed to be partnership property."

That this policy was acquired with partnership funds is established by the uncontradicted proof. We have not overlooked the ingenious argument of counsel for appellants that this partnership was in a prosperous condition, and that in fact the interest of Louis therein was such as to justify the conclusion the funds with which the premiums were paid were those of Louis rather than of the firm, though paid by check of the partnership and out of the partnership account. We have considered in this connection the evidence as found in the cases cited by counsel, among them: Vieth v. Chicago Title & Trust Co., supra; Bartlett v. Goodrich, supra; Proctor v. MacClaskey, supra. But we think there are material differences, not necessary here to relate, and that as of course, each case must rest upon its own peculiar facts.

█ Admittedly, the stocks and bonds which were purchased in the name of Louis were considered by all parties as having been purchased with partnership funds and belonging to the firm. There is no reason upon which the purchase of the insurance policy should be rested upon a different basis. Like all this other property, it was purchased with partnership funds and for partnership purposes. And when we consider the fact that this was purely a family business, the brothers having perfect confidence in each other, the failure of the books to show any cash surrender value of these policies as an asset of the firm is a matter of small consequence. So, likewise, as to the argument concerning the peculiar custom of these brothers of paying their individual debts out of partnership funds. All of these circumstances may tend to weaken, but not destroy, the presumption noted in the above-cited statute; and in no event could they be said to overcome the overwhelming, if not the uncontradicted, proof that the policy here in question was taken out for the benefit of the firm—a fact which stands out clear and convincingly established from the evidence in this case.

But we forego further discussion of the facts. Suffice it to say this record has been carefully examined, and we find ourselves in full accord with the trial judge, who wrote a brief but helpful opinion, citing our cases of Winston v. Winston, 242 Ala. 45, 4 So.2d 730; McDonald v. McDonald, 212 Ala. 137, 102 So. 38, 36 A.L.R. 761; Lashley v. Lashley, supra, and in which he reached the conclusion that the overwhelming proof disclosed that this policy of insurance was taken out by agreement of the parties for the benefit of the partnership and the premiums all paid with partnership funds.

Counsel for appellants insist that there was no proof of agreement of the parties, but that at most the evidence showed an understanding, which is to be distinguished from agreement. This, however, is looking at the testimony with too critical an eye. The evidence of Viola was that the entire matter was discussed, not only with the father, but with the family, which of course would include the brothers of Louis who, subsequently with him, were the sole members of the firm. And it included all the members of the firm at the time the policy was taken out, because, as we have stated, the family was interested. We think the trial court reached the proper conclusion on the facts, and that cross-complainants have made out their case by clear and convincing proof.

█ Counsel for appellants lay some stress upon the accuracy of pleading required in cases of this character, and that the averments of the cross-bill are insufficient to meet this test. We have previously stated the substance of the averments of the cross-bill in this regard. It disclosed that the policy was taken out after a thorough discussion between the interested parties and for the benefit of the partnership, that there might be cash immediately available in the event anything should happen to Louis, who was the managing director, and that the premiums were paid out of the partnership funds, and that the policy and its proceeds were the properties of the partnership. There was no demurrer interposed to this cross-bill; and if it lacked in technical accuracy, the point should have been made in the lower court. It cannot be for the first time presented on this appeal. Bruce Coal Co. v. Bibby, 201 Ala. 121, 77

So. 545; Davidson v. Brown, 215 Ala. 205, 110 So. 384.

In Marshall v. Marshall, supra, the averments as to resulting trusts were rather meager, as was observed in the opinion, but were held sufficient to sustain a decree of resulting trust rested upon a decree pro confesso. Like reasoning is applicable to the instant case.

While the agreement of the parties 'for submission of the cause, confirming the settlement of the partnership affairs and reserving the right to contest the proceeds of this insurance policy, may not be sufficient to invoke the principle applied in Walker v. Walker, Ala.Sup., 16 So.2d 190, yet it must be confessed that the language of this stipulation, considering the pleadings on file, tended very much to lead one to the conclusion that the only remaining question left for determination in the litigation was one of fact. But, however that may be, in the absence of demurrer, we are clear to the view the cross-bill was entirely sufficient to support the decree rendered. By this decree the proceeds of this insurance policy are considered partnership assets, one-fifth payable to the complainants, who represent the estate of Louis G. Bertolla.

We are persuaded this was a correct decree, and is due here to be affirmed. It is so ordered.

Affirmed.

THOMAS, LIVINGSTON, and STAKELY, JJ., concur.