54 So.2d 758

**WESTCOTT v. SHARP.**

7 Div. 93.

Supreme Court of Alabama.

Oct. 18, 1951.

Rehearing Denied Nov. 23, 1951.

420

L. Chandler Watson, Jr. and Charles Douglass, Anniston, for appellants.

Merrill, Merrill & Vardaman, Anniston, for appellees.

STAKELY, 'Justice.

This appeal is from a decree of the equity court, dismissing two cross-bills of the appellants (cross-complainants in the lower court) and awarding the relief prayed for in the complainant's original bill for the sale for division of the lands therein described.

Arthur S. Sharp, a resident of Oxford, Alabama, was married to Vera Henderson on July 5, 1947. They had no children. Arthur Sharp died September 16, 1948. He was survived by his widow Vera Sharp, his sister Malta Wells and two grandnieces, who are minors, Martha Rose Hanson and Sarah Diane Hanson. At the time of his death Arthur Sharp had to his credit in the Anniston National Bank $9,262.01, which Martha Rose Hanson and Sarah Diane Hanson in their cross-bill claim as a trust fund. He also had on deposit in the First National Bank of Anniston $5,312.29. He had two life insurance policies each in the sum of $2,500.00, one payable to Martha Rose Hanson and Sarah Diane Hanson and the other payable to his estate. He also owned real estate, business property, located in Oxford, Alabama, which appears to have had a value of about $5,000.00. Over the building on this property he had erected an apartment, which he furnished and which he was occupying at the time of his marriage.

Vera Sharp obtained letters of administration on the estate of Arthur Sharp in the probate court. Vera Sharp, individually and as administratrix of the estate of Arthur S. Sharp, deceased, and Malta Wells filed a bill against Martha Rose Hanson and Sarah Diane Hanson and their guardian, Mrs. Sallie Mae Westcott, who is their mother, seeking a sale of the real estate for division and for allotment for homestead and dower rights to the widow. In the bill it is alleged that there had not been a final administration of the estate and that the estate can be better administered in the circuit court, in equity. In the bill there is a prayer asking for transfer of the administration of the estate of Arthur S. Sharp, deceased, from the probate court to the circuit court, in equity. The court made an order transferring the administration of the estate of Arthur S. Sharp, deceased, from the Probate Court of Calhoun County, Alabama, to the Circuit Court of Calhoun County, Alabama, in Equity.

The appellants, respondents and cross-complainants in the court below, in their answer deny in substance that it was necessary to sell the property described in the bill for division between the joint owners or that Malta Wells was a joint owner of the property. It was prayed that the answer be taken as a cross-bill and in the cross-bill by Martha Rose Hanson and Sarah Diane Hanson through their guardian, their mother Mrs. Sallie Mae Westcott, they seek to recover as a trust fund from Vera Sharp individually and as administratrix of the estate of Arthur S. Sharp, deceased, the money on deposit to the credit of Arthur S. Sharp in the Anniston National Bank at the time of his death, consisting of deposits made on certain specific dates and in certain specific amounts, aggregating as aforesaid $9,262.01. The cross-bill also seeks to recover $342.90 alleged to have been received by Arthur S. Sharp from the estate

of Leila S. Hanson, deceased, on April 11, 1944, and $750.00 alleged to have been received by Arthur S. Sharp from the sale of the Leila S. Hanson automobile July 11, 1943. In a cross-bill by Martha Rose Hanson individually through her said guardian she seeks to recover from the cross-respondents one diamond stick pin which she claims was owned by Arthur S. Sharp and set apart to her and held by him in his lifetime in trust for her.

Leila Sharp Hanson, now deceased, was a sister of Arthur S. Sharp and had one son named Henry Hanson who was deceased at the time of the filing of the cross-bill. He was the father of the two children, Martha Rose Hanson and Sarah Diane Hanson, cross-complainants in this case. It is claimed that Leila Sharp Hanson before her death made a will in which she left and devised all of her property to her brother Arthur S. Sharp, but that prior to and at the time of the execution of the will she established a parol trust in all of her property, that Arthur S. Sharp was made trustee and accepted the trust and agreed to receive the property in trust for the grandchildren of Leila Sharp Hanson, namely Martha Rose Hanson and Sarah Diane Hanson. It is further claimed that all her real estate was sold and the proceeds collected and deposited in the Anniston National Bank to the credit of Arthur Sharp and that Arthur Sharp thereafter declared himself the trustee of this fund in trust for the grandchildren of Leila Sharp Hanson, namely Martha Rose Hanson and Sarah Diane Hanson.

All of the witnesses were examined in open court and testified orally before the trial judge. The court denied relief under the cross-bills and dismissed them. Relief was granted to complainants under the original bill and the property ordered sold for division.

 I. It is urged that the cross-bills seek to bring before the court for adjudication matter that is not germane to the subject of the original bill. But the original bill seeks to have the estate of a decedent transferred from the probate court to the equity court so that it can there be better administered. In the original bill lands of the estate are sought to be sold for division among the heirs who are joint owners or tenants in common. Allotment of dower and homestead rights to the widow are also sought. The bill was filed by Vera Sharp in her administrative and individual capacity. Malta Wells, an adult heir, joins as party complainant in filing the bill. When the equity court takes jurisdiction all incidental questions must there be determined. Hamby v. Hamby, 165 Ala. 171, 51 So. 732. The administration of an estate of a decedent is one entire proceeding. It is single and continuous. It is the administration of a trust and the trust is a unity. Faulk v. Money, 236 Ala. 69, 181 So. 256; Dillard v. Gill, 231 Ala. 662, 166 So. 430; Brown v. Olsson, 254 Ala. 695, 49 So.2d 564. The determination of the ownership of the alleged fund in the Anniston National Bank and the ownership of the diamond pin are incidents in the administration of the estate. These things being true, the cross-bills were not subject to demurrer on this ground. See Graham v. Powell, 250 Ala. 500, 35 So.2d 175.

II. The evidence is voluminous and it would be impraticable to set it all out. It has been carefully considered. Caples v. Young, 206 Ala. 282, 89 So. 460. There are some facts, however, which stand out without dispute. Arthur S. Sharp, the decedent, and his sister Leila Sharp Hanson together with the son of Leila Sharp Hanson, Henry Hanson, lived together in Oxford, Alabama, as a family from the birth of Henry Hanson until the marriage of Henry Hanson, a few years prior to his death. No information relative to the father of Henry Hanson appears in the case. Arthur S. Sharp was the head of the family and contributed chiefly to the support of Leila Sharp Hanson and her son Henry Hanson. Arthur S. Sharp was a thrifty and industrious man and appears to have been a good and experienced business man. He was generous in providing for his sister and his nephew. He supported them and assisted in the rearing of Henry Hanson and paid the expenses

of his education in the local schools at Oxford and later at the University of Alabama. After the marriage of Henry Hanson he continued to assist him and provided money for him when he died and was buried in Oxford, August 25, 1939. Arthur Sharp and his sister Leila Sharp Hanson continued to live together in Oxford until the death of Leila Sharp Hanson on June 3, 1943. Arthur Sharp contributed to the support of Leila Sharp Hanson for several years prior to her death. For about three years prior to her death she was an invalid with a malignant cancer. Soon after the death of Henry Hanson, Arthur Sharp and his sister Leila Sharp Hanson made reciprocal wills, each devising and bequeathing to the other all property in which they had an interest. They owned property jointly in Calhoun County at the time the wills were made. The wills were dated August 31, 1939. This is the will of Mrs. Leila Sharp Hanson on which it is sought to engraft a trust. The will was made approximately three months before the birth of Sarah Diane Hanson. The will of Leila Sharp Hanson which was duly admitted to probate was introduced in evidence. After providing for the payment of just debts and funeral expenses, she devised all of her property "to my brother Arthur S. Sharp, to his sole and separate use forever." There is no mention in the will or provision in the will for any trust whatsoever. In the cross-bill as originally framed it was alleged that Arthur Sharp executed a will, but this feature of the cross-bill was withdrawn by amendment. No will of Arthur Sharp was introduced in evidence. No will of Arthur Sharp was probated. There was some conflict in the evidence as to the existence of such a will at the time of the death of Arthur S. Sharp.

At this point it is necessary to consider the effect on the case of § 149, Title 47, Code of 1940, which is as follows: "No trust concerning lands, except such as results by implication or construction of law, or which may be transferred or extinguished by operation of law, can be created, unless by instrument in writing, signed by the party creating or declaring the same, or his agent or attorney lawfully authorized thereto in writing."

It is obvious that while the statute does not permit the creation of a trust in land except upon compliance with the statute, it does not prohibit the creation of a trust in personalty by parol. According to the evidence at the time Leila Sharp Hanson made her will she owned only real estate. Before her death in 1943 she and Arthur Sharp, who was a joint owner or tenant in common, conveyed some of the real estate to one Hilton. This conveyance was dated September 26, 1942. The mortgage and notes evidencing the purchase price were payable to Leila Sharp Hanson and Arthur S. Sharp. At the time Sarah Diane Hanson had not been born. There is nothing to show that Leila Sharp Hanson sought to set up a trust in writing. The trust sought to be engrafted on her will, if any, rested entirely in parol. As will be shown inferences may be drawn that the other real estate in which Leila Sharp Hanson had an interest was sold by Arthur S. Sharp subsequent to her death and the proceeds deposited to his credit in the Anniston National Bank along with the proceeds of the notes in the Hilton sale. It is contended that § 149 Title 47, Code of 1940, does not apply, because the subject matter of the alleged trust became converted from realty into personalty. This question has been considered by this court in a number of cases. In the case of Moore v. Campbell, 102 Ala. 445, 14 So. 780, 781, it is said: "Clearly, if the agreement, when made, was void by virtue of section 1845 of the Code (now § 149, Title 47), no subsequent act or occurrence could render it valid."

In the case of Chesser v. Motes, 180 Ala. 563, 61 So. 267, it was said: "In the case at bar, when the agreement which is sought to be enforced was made, there had been no conversion of the land into personalty, and the claim of the plaintiff was not under the deed, but is based upon an independent parol agreement between Motes and his wife as to what should be done with the proceeds of the sale of the land when subsequently made by the wife; and said

agreement is nonenforceable under the terms of section 3412 of the Code of 1907 (now § 149, Title 47)."

The case of Willard v. Sturkie, 213 Ala. 609, 105 So. 800, sustains the foregoing decisions.

█ It is insisted however that after the deposits in the Anniston National Bank were made a new trust was set up in these funds for the benefit of Martha Rose Hanson and Sarah Diane Hanson by Arthur S. Sharp. As will appear, there is nothing in writing to show such a trust, but the effort is to establish a parol trust through alleged declarations of Arthur Sharp, Johnson v. Amberson, 140 Ala. 342, 37 So. 273, taken in connection with other evidence, as for example proof that the account in the Anniston National Bank was not used as a checking account. If such a trust was at this latter time sought to be set up, the funds in the bank had clearly then become personal property and the ban of § 149, Title 47, Code of 1940, would not under these circumstances apply. The oral acknowledgment of the trust by Arthur Sharp after the deposits were made is the equivalent of a new declaration of trust. Bogert on Trust and Trustees, Vol. 1, p. 405; Scott on Trusts, Vol. 1, p. 285.

The records of the account of Arthur S. Sharp in the Anniston National Bank were introduced in evidence. This account was opened before the birth of his grandnieces and long before the death of his sister. There is no statement whatsoever in connection with the account on the books of the bank showing in any way that it constituted a trust fund. The bank certainly had no knowledge or notice on its part that it was regarded as a trust fund. The deposits began in October, 1942, and were made at intervals through and including June 26, 1946. Arthur Sharp had to his credit in this account $1,062.11 on October 2, 1942. This was many months before the death of his sister. We see no room for contention that this amount was at that time placed in trust for the appellants or any other person. The amount of some of the other deposits and the dates on which such deposits were respectively made do afford an inference that these deposits represented the proceeds of sale of properties both real and personal which were owned jointly by Arthur S. Sharp and his sister Leila Sharp Hanson. There were no withdrawals from this deposit in the Anniston National Bank after October 2, 1942. In recent years before his death Arthur S. Sharp used the account in the First National Bank of Anniston as a checking account.

There is no doubt that Arthur Sharp held his grandnieces in great affection. He contributed generously to their support and to the purchase of such necessities for them as clothes, etc. There are tendencies of evidence going to show statements made by him in his lifetime that he would see to it that these children would be educated and taken care of.

Prior to his death Arthur Sharp had two policies of insurance on his life each for $2500.00 and each payable to his estate. He caused the name of the beneficiary in one of these policies to be changed from his estate to his grandnieces Martha Rose Hanson and Sarah Diane Hanson.

Malta Wells testified that on a visit to her sister Leila Sharp Hanson she was told by Leila Sharp Hanson that she had made a will giving all of her property to her brother Arthur Sharp, that her reason for devising and giving her property to her brother was on account of the fact that he had supported her and her son Henry Hanson and had paid out a great deal of money for the support of herself and child, that he had always looked after the joint property, paid taxes and insurance on it, paid all the bills for the house and doctors' bills, assisted in rearing Henry Hanson and sending him to school, paid Henry Hanson's funeral expenses and that he had paid the expenses of her illness. There is testimony tending to show that Arthur Sharp stated that in order to provide for the children, he was changing one of his policies so as to make it payable to them.

Tendencies of evidence further show that Arthur Sharp had left the deposit in the Anniston National Bank and had not checked on it because he wished to use this fund as

a fund with which to erect a home for himself and his wife.

■ There are many other details in the evidence which as above stated it is impracticable to attempt to set out but the foregoing gives a general idea of the evidence before the court on the issues made by the cross-bill of Martha Rose Hanson and Sarah Diane Hanson. As stated the court heard the evidence orally and decided the case in favor of the complainants, appellees here, and ordered the property sold for division and denied the prayer of the cross-bills. We have often said that in this situation we will not disturb the decree of the lower court unless it is palpably wrong. We think that this view of the case should apply here. Arthur Sharp was a good and experienced business man. He was bound to have known of the wisdom and value of putting in writing any plan that he might have had for setting up a trust for his grandnieces. But he left no writing of any kind to indicate an intention. to establish a trust. On the contrary there is evidence supporting the view that he wanted his property to go to his wife as he felt that he had done sufficiently well by his grandnieces and their father.

■ Our cases make it clear that if proof of a trust is unsatisfactory, doubtful or uncertain, the relief will not be granted. Lashley v. Lashley, 219 Ala. 312, 122 So. 314; Lauderdale v. Peace Baptist Church, 246 Ala. 178, 19 So.2d 538; Merchants Nat. Bank of Mobile v. Bertolla, 245 Ala. 662, 18 So.2d 378.

III. With reference to the claim of Martha Rose Hanson for the diamond stick pin which she set up in her cross-bill, her position is that it was held in trust by Arthur S. Sharp for her benefit. There are tendencies of the evidence from which it might be inferred that Arthur Sharp intended to make a gift of the diamond pin in the future to Martha Rose Hanson but the undisputed evidence shows that it was in his possession at the time of his death. According to Sallie Mae Westcott, the mother of Martha Rose Hanson, she went with Vera Sharp and Malta Wells to the apartment of Arthur Sharp on the Monday after the Sunday on which he was buried but the diamond could not be found. Martha Rose Hanson then said that she knew where he kept it, that it was in a little cedar chest and there the diamond was found in an aspirin box. "We took the diamond home." The next day Vera Sharp came and got it from us, having been advised by her attorney that she should keep everything in her possession until everything was settled. The diamond was kept in the possession of Sallie Mae Westcott and Martha Rose Hanson for one day and then was surrendered to Vera Sharp. Under these circumstances the court could clearly find that the alleged gift was inoperative by virtue of § 129, Title 47, Code of 1940, which provides in substance that parol gifts of personal property are inoperative until the custody, control, management and use of the property passes from the donor to the donee and is possessed by the donee or his agent. In the event the donee is a minor living with her mother, the possession of the mother must be regarded as the possession of the child. The court could find that there was never such delivery by Arthur S. Sharp and possession by the child through her mother as to constitute a valid gift. De Mouy v. Jenson, 255 Ala. 337, 51 So.2d 506.

■ Without reference to the statute which is now § 129, Title 47, Code of 1940, this court in McHugh v. O'Connor, 91 Ala. 243, 9 So. 165, stated in effect by way of dictum that where the donor intending to make a gift declares that he holds in trust for another, this dispenses with actual delivery. We find it unnecessary however in the present case to determine whether the foregoing situation constitutes an exception to the operation of the statute. The only proof tending to show that Arthur S. Sharp held the diamond as trustee for his niece is proof after his death of declarations made by Arthur Sharp in his lifetime. These declarations are not sufficient of themselves to establish a completed trust. Merchants Nat. Bank of Mobile v. Bertolla, supra. The trust must come into being at the time the title passes. If there is no sufficient proof upon which to establish a trust as an original proposition, subsequent declarations of the alleged trustee will not suffice.

426

Merchants Nat. Bank of Mobile v. Bertolla, supra. Since we do not think that there is clear and satisfactory proof of the trust in the case at bar, we find it unnecessary to determine whether there is an exception under the foregoing statute, where it is claimed that Arthur Sharp held the diamond in trust for his niece. Authorities supra.

The decree of the lower court will be affirmed.

Affirmed.

LIVINGSTON, C. J., and BROWN and LAWSON, JJ., concur.