The appellant, Robert G. Holway (the "contestant"), filed in the trial court, pursuant to Ala. Code 1975, § 43-8-199, a contest of the probate of the last will and testament of Mary Eileen Holway, his mother (the "mother"), against his sister, Margaret Catherine Wanschek (the "executrix"), and against his other sister, Jean Ann Whitney, and against his brother, Timothy Kevin Holway (the "other two siblings"). Jean Ann Whitney, Margaret Catherine Wanschek, and Timothy Kevin Holway are collectively referred to as "proponents". The complaint, as amended, contains seven counts contesting the mother's will, alleging fraud in probating the will, requesting that transfers of assets be set aside and requesting an accounting of the estate. Each proponent filed a motion to dismiss, which was granted by the trial court. The contestant's motion for a new trial was denied by application of Rule 59.1, Ala. R. Civ. P., and he appealed. We reverse and remand.
More than a year after the mother's will was probated, the contestant filed his contest of his mother's will and made other claims against all the proponents. The executrix and the other two siblings filed separate motions to dismiss. However, before the court entered its final judgment dismissing all claims, the two siblings filed affidavits relating to the issue of the trial court's in personam jurisdiction. The contestant did not object to the filing of the affidavits and filed one himself on this issue. The trial court stated in its final judgment that it had reviewed these affidavits and all the pleadings. The contestant, in that portion of his brief pertaining to jurisdiction, argues that the filing of the affidavits converted the motions to dismiss into motions for summary judgment. Because the contestant and two of his siblings submitted matters outside the pleading, which were considered by the trial *Page 431 
court, those siblings' motions to dismiss were converted into motions for summary judgment. See Rule 12(c), A.R.Civ.P., andGraveman v. Wind Drift Owners' Ass'n, Inc., 607 So.2d 199 (Ala. 1992). Therefore, we will consider the standard of review applicable to a motion for summary judgment on the issue pertaining to the trial court's jurisdiction over those two siblings. Affidavits were not filed on the statute of limitations issue; therefore, as to that issue, we will consider the standard of review applicable to a motion to dismiss.
 I. Motion to Dismiss
The standard of review applicable to a motion to dismiss is set forth in Green v. Nemish, 652 So.2d 243 (Ala. 1994). Further,
 "The well-understood position of an appellate court reviewing the grant of a motion to dismiss is, taking the allegations of the complaint most strongly in favor of the pleader, to determine whether the plaintiff could prove any set of facts in support of his claim which would entitle him to relief. Rule 12, ARCP, and commentary."
Jones v. Lee County Commission, 394 So.2d 928, 930 (Ala. 1981) (emphasis added).
Because the allegations of the complaint govern the ruling on a motion to dismiss, the factual allegations of the complaint as set forth here:
 "6. [The mother] was a wealthy widow who died on June 9, 1994 in Madison County, Alabama.
 "7. In November of 1992, [sibling] WHITNEY, a clinical psychologist, diagnosed [the] mother . . . as suffering from Alzheimer's disease. Subsequently, early in 1993, [the mother] was diagnosed by a licensed physician with Multi Infarct Dementia which is a condition very similar to Alzheimer's Disease. At the time of her death at age 73, [the mother] was in the advanced stages of Multi Infarct Dementia.
 "8. Beginning in 1993 after [the mother] left her Florida home to visit [the executrix] WANSCHEK in Huntsville, Alabama, when [the mother] was 73 years old, in poor health and unwilling or unable to handle her business affairs, the [proponents] conspired to enrich each other, themselves, their children and their affiliates by taking control of [the mother's] affairs and by conducting her affairs in a manner which was calculated to, and which did, benefit themselves, their children and their affiliates at her expense and at plaintiff's expense.
 "9. In furtherance of this conspiracy, [the executrix] WANSCHEK began acting as the personal representative for [the mother] because of her failing health. As her personal representative, and in a dominant relationship to her, she had drafted, and caused [the mother] to execute an instrument purporting to be the Last Will and Testament of [the mother] replacing a prior will of [the mother] which new will was probated in the Probate Court of Madison County on August 24, 1994. . . . Said new will was executed by [the mother] on March 14, 1994, which was approximately three (3) months prior to her death and when she was in the advanced stages of Multi Infarct Dementia. A confidential relationship existed between the [proponents] and [the mother] from 1993 through the time of her death in 1994 and the [proponents] were the dominant parties in their relationships with [the mother].
 "10. Upon gaining control of her legal and business affairs, the [proponents] began causing [the mother] to transfer her wealth to them.
 "11. When the [proponents] began enriching themselves at the expense of [the mother] she was approximately 73 years of age, in failing health, suffering from the Multi Infarct Dementia and easily susceptible to undue influence.
 "12. Through the use of undue influence, the [proponents] caused [their mother] to make inter vivos gifts and testamentary devises to [them,] their children, and affiliates. All of the documents of conveyance and testamentary disposition were drafted by an attorney chosen by the [proponents]. Despite her age and susceptibility to undue influence, [the mother] was not afforded independent advice in her transactions with the [proponents]. *Page 432 
 "13. The [proponents] falsely represented to [the mother] that [the contestant] had been taken care of outside her will and had already received his proportionate share of her estate, which representations were false and were known to be false at the time the representations were made.
 "14. As a direct and proximate result of the fraud and undue influence perpetrated on [their mother], the [proponents] procured under these false pretenses the signature of [their mother] on the will date[d] March 14, 1994 and thereafter filed the same in the Probate Court of Madison County.
 "15. Pursuant to the [proponents'] plan, on August 24, 1994 shortly after the death of [their mother], [the executrix] offered the aforedescribed will for probate in the Probate Court of Madison County. That will designated [proponents] as the sole beneficiaries of the Estate of [the mother] and named [proponent] Wanschek as Executrix.
 "16. An ancillary administration of the Alabama will for [the mother] was filed in Florida where [the mother] owned real property. The ancillary estate in Florida has been closed and the funds distributed to [proponents]. The ancillary estate in Florida consisted of a house and real estate valued at approximately $179,500.
 "17. Believing that a will contest must be made either before the will is offered for probate or within six months thereafter, the [proponents] and their representatives intentionally failed (i) to inform [the contestant] that he had been written out of his mother's will, (ii) failed to provide [the contestant] with a copy of the probated will even after [the contestant] repeatedly requested that a copy of the will be provided to him until approximately September 15, 1995 at which time [the contestant] was provided a copy of the will by [the proponents] after [the contestant] informed [the proponents] that he was filing this lawsuit and had informed the Madison County Probate Office that [the proponents] would not provide him with a copy of the will and (iii) informed [the contestant] that his signing of a 'waiver of notice' consent to the probate of the aforedescribed will was a 'mere formality' not effecting [sic] his legal rights. Not until the six month period had greatly expired on August 29, 1995, did [the proponents] inform [the contestant] that he had not been named as a beneficiary in his mother's new will. This delay was part of [the proponents'] fraudulent scheme to deprive [the contestant] of his legal right to contest their actions.
 "18. Even by August 29, 1995 when [the proponents] informed [the contestant] that he was not named as a beneficiary in his mother's will, the [proponents] and their representatives had failed to provide (i) copies of the will, (ii) petition to probate or other information that would have alerted [the contestant] that the [proponents] had influenced their mother to write a will that substantially benefited them, and (iii) had manipulated the time tables involved with his ability to contest the will.
". . . .
 "31. [T]he executrix as well as a beneficiary under the will of [the mother], on several occasions after the death of [the mother], which occurred on June 9, 1994, including but not limited to statements made on December 13, 14, 21, and 26, 1994, informed [the contestant] that he was still a beneficiary under his mother's will and that he would be receiving his one-fourth share as soon as the Estate of [his mother was] closed.
". . . .
 "34. [The contestant] subsequent to his mother's death spoke to [the proponents] on several occasions including but not limited to the following dates: June 20, 1994, June 21, 1994, August 4, 1994, August 21, 1994, September 12, 1994, October 1, 1994, October 3, 1994, October 5, 1994, October 9, 1994, October 16, 1996, October 22, 1994, October 30, 1994, November 19, 1994, November 22, 1994, December 14, 1994, January 2, 1995, and January 7, 1995.
 "35. [The proponents] during said conversations recommended to [the contestant] various ways he could utilize his inheritance from his mother's estate while *Page 433 
knowing that [the contestant] was not . . . a beneficiary under his mother's last will.
 "36. [The contestant] informed [the proponents] of his intentions to incur additional debt and make financial commitments to third parties based upon his inheritance from his mother's estate and his intention to sign a 'Waiver of Notice Consent' in regard to the probating of his mother's will. At this time, [the proponents] knew that [the contestant] was not named as a beneficiary under his mother's will. [The proponents] intentionally deceived [the contestant] and suppressed the fact that he was not named as a beneficiary under his mother's will. [The contestant] took the aforedescribed actions to his detriment."
Section 43-8-5, Ala. Code 1975, was enacted in 1982, and it extends, under limited circumstances, the time for filing an action relating to the fraudulent administration of an estate. It has been cited only in Vandegrift v. Lagrone, 477 So.2d 292
(Ala. 1985), in which the court held it inapplicable. Section43-8-5 states:
 "Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under this chapter or if fraud is used to avoid or circumvent the provisions or purposes of this chapter, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person (other than a bona fide purchaser) benefitting from the fraud, whether innocent or not. Any proceeding must be commenced within one year after the discovery of the fraud or from the time when the fraud should have been discovered, but no proceeding may be brought against one not a perpetrator of the fraud later than five years after the time of the commission of the fraud. This section has no bearing on remedies relating to fraud practiced on a decedent during his lifetime which affects the succession of his estate."
(Emphasis added.)
The emphasized portion of § 43-8-5 allows a person injured by fraud to "obtain appropriate relief." Appropriate relief would include (1) damages from the proponents for their fraudulent acts of misrepresentation and concealment for the purpose of denying the contestant an opportunity to timely contest his mother's will; (2) a contest of the will because the facts upon which a contest could be based were misrepresented and concealed by the fraudulent acts of the proponents; and (3) a challenge to the disposition of property under the will.
Section 43-8-5 states that "[a]ny proceeding must be commenced within one year after the discovery of the fraud or from the time when the fraud should have been discovered." The contestant alleges in paragraph 15 of the complaint that the mother's will was probated on August 24, 1994, and in paragraph 17 that it was after the six-month period to contest the mother's will that the proponents told him he had not been named as a beneficiary in his mother's new will. Within a month of receiving this information, the contestant filed his complaint.
The complaint was not filed within one year of the probate of the will, but the contestant alleges that during the time from the probate of the will until the complaint was filed, the proponents concealed the fact that he was not named as a beneficiary of his mother's estate and even recommended to him "various ways he could utilize his inheritance from his mother's will while knowing that [the contestant] was not a beneficiary under his mother's last will."
In Burch v. Burgess, 521 So.2d 921 (Ala. 1988), the son failed to contest the probate of his mother's will because the executrix and sole beneficiary told the son that she had died without assets and that he need not go to the probate court. The court held that the son's filing of a fraud claim within one year after discovering the concealment of the value of his mother's estate was a timely filing. In Burch, the court stated:
 "We find the case of Fuller v. Qualls, 241 Ala. 673, 4 So.2d 418 (1941), to be a helpful analogy. In Fuller, the existence of the testator's will was fraudulently concealed from the proponent. The proponent discovered the will and offered it for probate more than five years after the death of the testator. This Court held that *Page 434 
the statute of limitations for filing the petition to probate the testator's will was tolled by the fraudulent concealment of the will, and that the proponent's filing of the petition for probate of the will within one year of her discovery of the fraud was effective as a timely filing. See Ala. Code 1975, § 6-2-3."
Id. at 923.
The supreme court in Vandegrift v. Lagrone, 477 So.2d 292
(Ala. 1985), again relied upon Fuller, stating:
 "A claim for fraud accrues at the time of the discovery of facts which would have led a person of ordinary prudence to a discovery of the fraud. . . .
 ". . . The question of when a party discovered or should have discovered fraud which would toll the statute of limitations is for the jury."
Id. at 295 (citations omitted). "A dismissal based on the statute of limitations is proper only if, from the face of the complaint, it is apparent that the tolling provisions do not apply." Travis v. Ziter, 681 So.2d 1348, 1351 (Ala. 1996). See also Grimes v. Estate of Stewart, 506 So.2d 465 (Fla. Dist. Ct. App. 1987), and Ebeling v. Voltz, 454 So.2d 783 (Fla. Dist. Ct. App. 1984).
Based on the authorities cited above, we conclude that the allegations of the complaint are sufficient to present a question of fact as to whether the limitations period provided in § 43-8-5 had expired. The trial court could not properly dismiss the complaint on the basis that the limitations period of § 43-8-199 had expired.
 II. Summary Judgment
The other two siblings filed separate Rule 12(b)(2) motions to dismiss, with attached affidavits, challenging the jurisdiction of the trial court. As stated earlier, those two siblings' motions to dismiss were converted into motions for summary judgment. The standard of review applicable to a ruling on a motion for summary judgment is set forth in Ex parteAnderson, 682 So.2d 467 (Ala. 1996).
Sibling Timothy Kevin Holway alleged that the court lacked jurisdiction over him because he was a resident of the State of Florida. Rule 4.2(a), A.R.Civ.P. Sibling Jean Ann Whitney's motion was similar, except that she alleged that she was a resident of the State of Ohio. The two siblings' affidavits first state that they did not then reside in Alabama, and next states that they had not committed any acts described in Rule 4.2(a)(2)(A), (B), (C), (D), (F), and (G). Whitney further states she had not lived in Alabama in a marital relationship. Holway further states that he had not lived in Alabama within the past five years. However, the contestant's affidavit states that their mother died on June 9, 1994, in Madison County, Alabama, and that her will was probated in the Probate County of Madison County. In their trial court briefs in support of their separate motion to dismiss, the two siblings each admit that they are beneficiaries of their mother's estate. "Pleadings developed in the course of the pending case may always be utilized by the party opponent in that case without formal offer of proof. Such pleadings mold the issues of materiality in the case and the statements in them constitute judicial admissions which generally are conclusive against the pleader." C. Gamble, McElroy's Alabama Evidence, § 181.01(1) (5th ed. 1996) (footnotes omitted).
The applicable law regarding in personam jurisdiction is set forth in Rule 12(b)(2) and in Dillon Equities v. Palmer Cay,Inc., 501 So.2d 459 (Ala. 1986). See also Shrout v. Thorsen,470 So.2d 1222 (Ala. 1985). Further, the Supreme Court has written:
 "When the equity court takes jurisdiction all incidental questions must there be determined. The administration of an estate of a decedent is one entire proceeding. It is single and continuous. It is the administration of a trust and the trust is a unity."
Westcott v. Sharp, 256 Ala. 418, 422, 54 So.2d 758, 760 (1951).
 "The term 'administration,' in this respect, is of comprehensive meaning. It includes more than the mere collection of the assets, the payment of debts and legacies, and distribution to the next of kin. It involves all which may be done rightfully in the preservation of the assets, and all which may be done legally by the administrator *Page 435 
in his dealings with creditors, distributees or legatees, or which may be done by them in securing their rights; and it includes all which may be done, and rightfully done, in relation to adverse claims to assets, which have come to the possession of the administrator as the property of the testator or intestate."
Martin v. Ellerbe's Adm'r, 70 Ala. 326, 338 (1881).
The administration of the mother's estate in an Alabama court, the status of these two siblings as beneficiaries, and the allegations of fraud regarding the administration of the estate create sufficient contacts with this state to give the court jurisdiction; " 'under the circumstances, it is fair and reasonable to require [these siblings] to come to this state to defend [the] action.' Rule 4.2(a)(2)(I), Ala. R. Civ. P."Dillon Equities at 461.
The trial court could not properly dismiss the complaint as to these two siblings on the basis that the trial court lacked in personam jurisdiction. The judgment dismissing the complaint is reversed.
REVERSED AND REMANDED.
YATES, MONROE, and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs in the result only.